808 A.2d 135 (2002)
354 N.J. Super. 477
STATE of New Jersey, Plaintiff-Appellant,
v.
Salvatore GOLOTTA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 18, 2002.[1]
Decided October 24, 2002.
*136 Wayne J. Forrest, Somerset County Prosecutor, attorney for appellant (Tara L. Johnson, Assistant Prosecutor, of counsel and on the brief).
Miller, Meyerson, Schwartz & Corbo, attorneys for respondent (Leonard Meyerson, Jersey City, and David H. Baskind, of counsel; Mr. Baskind, on the brief).
Before Judges SKILLMAN, CUFF and LEFELT.
The opinion of the court was delivered by CUFF, J.A.D.
We granted the State's motion for leave to appeal an order granting defendant's motion to suppress. Defendant responds that the police lacked an articulable suspicion to stop his vehicle and further contends that the appeal is barred by principles of double jeopardy. We affirm.
On November 5, 2000, defendant Salvatore Golotta was driving northbound on Route 206 when he was stopped by the Peapack-Gladstone police. Following the administration of a breathalyzer, defendant was charged with driving while intoxicated contrary to N.J.S.A. 39:4-50. Defendant filed a motion to suppress the results of the breathalyzer test. Following an evidentiary hearing on his motion, the municipal court judge denied the motion. Defendant entered a conditional plea of guilty and filed a timely appeal in the Law Division. Following a de novo review of the record of the motion to suppress, the Law Division judge granted defendant's motion. He found the officer observed no activity by defendant which would warrant a stop but detained defendant solely based on the information from an anonymous caller. Therefore, he vacated the guilty plea and entered a judgment of acquittal.
The factual record is scanty. The municipal court judge appropriately confined the testimony to the information received by the officers from the dispatcher and the observations of defendant's operation of his motor vehicle. From that record we learn that at approximately 9:30 p.m. on November 5, 2000, the Peapack-Gladstone *137 police received a telephone call from an anonymous caller reporting an erratic driver traveling northbound on Route 206. Officers Stephen Ferrante and Frank French were dispatched to locate the motor vehicle. Each officer was driving a patrol car.
Ferrante testified that the dispatcher told him the vehicle was driving erratically, that it was out of control and weaving back and forth. He was informed that he was looking for a blue pick-up truck bearing the license plate VM407B. At the intersection of Pottersville Road and Route 206, Ferrante observed a blue truck. He testified as follows:
A. I approached 206 at the crest of the hill. At the traffic light, as I approached, I witnessed the blue ... a blue pick-up truck pass in front of me. Officer French then was northbound on 206 behind this vehicle. And we initiated the stop at the same time.
Q. Did Officer French actually initiate the stop?
A. Officer French was in front of me. Activated as ... We activated our lights at the same time. And Officer French... was ahead of me in stopping the vehicle.
THE COURT: Can you describe what the vehicle was doing?
WITNESS: Sir, I was only behind the vehicle for a matter of four to five seconds before we ... we effected the ... the stop. I could not ... I did not witness any ... any movements of the vehicle whatsoever.
THE COURT: Can you tell us if the... the other officer did?
THE WITNESS: I cannot. I ... I believe that he wasn't ... he caught up to the vehicle just as I did. He did ... was not following it for purpose of ...
THE COURT: The only thing you have at this stage is a blue pick-up truck. It's the only information you have.
WITNESS: Blue pick-up truck driving erratically. Yes.
Officer French did not testify.
The stop initiated by Officers French and Ferrante was an investigatory stop. To justify the stop, the officers required "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion of criminal or quasi-criminal activity. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). The reasonable suspicion required to justify an investigatory stop is lower than the probable cause required for an arrest. State v. Stovall, 170 N.J. 346, 356, 788 A.2d 746 (2002).
Recently, in State v. Rodriguez, 172 N.J. 117, 796 A.2d 857 (2002), the Supreme Court addressed whether the information provided by an anonymous tip, standing alone, may form a reasonable articulable suspicion of criminal or quasi-criminal activity. The Court held that typically some verification or corroboration of the anonymous tip must be obtained. Justice Veniero wrote:
Generally, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." [Alabama v. White, 496 U.S. 325,] 330, 110 S.Ct. [2412,] 2416, 110 L.Ed.2d [301,] 309 [1990]. Stated differently, courts have found no constitutional violation when there has been "independent corroboration by the police of significant aspects of the informer's predictions[.]" Id. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310. The analysis in any given case turns ultimately on the totality of the *138 circumstances. Id. at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 309.
[Id. at 127-28, 796 A.2d 857.]
In Rodriguez, the Court found that the police decision to escort defendant to the patrol office at a bus terminal based on nothing more than that he fit the description provided by an anonymous caller was not justified by a reasonable articulable suspicion of criminality. Id. at 131, 796 A.2d 857.
We reach a similar conclusion in this case. Here, defendant was stopped for no other reason than he was driving northbound on Route 206 in a blue pick-up truck. Neither officer observed any action by defendant which would confirm that he was operating the vehicle erratically.
The State urges that the tip received in this case is particularly reliable because it was given by a citizen rather than a confidential informant who might be engaged in criminal activity. In support of its argument, the State relies on State v. Lakomy, 126 N.J.Super. 430, 315 A.2d 46 (App.Div. 1974). There, a named citizen informer called the police to report that an armed person was on the premises of a business. The informer met the police, led the police to the washroom and identified defendant as the armed man. Id. at 432, 315 A.2d 46. While this court acknowledged that some verification of an informant's disclosure of criminal activity and a demonstration of the informant's trustworthiness is necessary to establish the informant's credibility, id. at 434, 315 A.2d 46, the involvement by the citizen informer provided a measure of reliability to the uncorroborated tip. Id. at 436, 315 A.2d 46. This circumstance, coupled with the potential for violence due to the presence of a gun, justified the stop and frisk of defendant. Ibid.
Similarly, in Stovall, supra, 170 N.J. at 371, 788 A.2d 746, the Court found that information from an identified airline ticket agent conveyed to an experienced narcotics investigator provided reasonable articulable suspicion for the investigator to conduct an investigatory stop of an arriving passenger. Notably, in Stovall, the ticket agent raised concerns about the validity of the identification documents used by two passengers and the investigator at the airport confirmed that the identification was fraudulent. Id. at 366, 788 A.2d 746. Furthermore, other facts were gathered and evaluated by the investigator which, considered in their entirety, provided ample reasonable suspicion of criminal activity and warranted an investigatory stop. Id. at 369, 788 A.2d 746.
In Lakomy, the source of the tip was a corporate executive who not only provided information to the police but also led the police to the suspect. Lakomy, supra, 126 N.J.Super. at 436, 315 A.2d 46. In Stovall, the airline ticket agent was identified and provided specific information to raise concerns about the use of fraudulent identification. Stovall, supra, 170 N.J. at 366-67, 788 A.2d 746. Here, however, the informant is not an identified or identifiable person. Thus, we cannot cloak the anonymous caller with any enhanced level of reliability or trustworthiness. Moreover, unlike Stovall, the police officers in this case made no observations of defendant's behavior as a driver. In short, there is nothing in this record from which the officers could determine the veracity and the basis of knowledge of the person supplying the tip and ultimately the tip itself. For these reasons, we conclude that the officers did not have a reasonable articulable suspicion of quasi-criminal activity to justify the stop of defendant.
Although we affirm the order granting defendant's motion to suppress, we observe that the Law Division judge should not have entered a judgment of *139 acquittal. The record contained no other evidence than the circumstances surrounding the stop of defendant. Having found that the stop was without cause and the evidence seized as a result of an unjustified stop should have been suppressed, the appropriate remedy was a remand to the municipal court for further action by the prosecutor. We suspect that the complaint will be dismissed because it appears that the State has no evidence of intoxication other than the breathalyzer results. The record before the Law Division judge was wholly insufficient to allow a consideration of the merits of the charges because the record in the municipal court was confined solely to the circumstances leading up to the stop. Furthermore, the State made no concessions on the record regarding the state of its evidence to warrant entry of a judgment of acquittal.
The state of the record before the Law Division judge also dictates rejection of defendant's argument that this appeal is barred by the constitutional prohibition against double jeopardy. Double jeopardy generally attaches when there has been a prior adjudication or a dismissal has been improperly granted. Thus, jeopardy did not attach when an indictment was dismissed for pre-indictment delay, United States v. Scott, 437 U.S. 82, 100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65, 80 (1978), or when a juvenile was given a recommendation of innocence at an informal hearing, State in the Interest of A.H., 304 N.J.Super. 34, 43, 697 A.2d 964 (Ch. Div.1997). The State will be barred from seeking review of an acquittal only "if `the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" State v. Widmaier, 157 N.J. 475, 490, 724 A.2d 241 (1999) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 1354-55, 51 L.Ed.2d 642, 651 (1977)).
The state of the record in this case was confined solely to the circumstances of the stop. The disposition by the Law Division judge of the motion to suppress was in no sense a resolution of the merits of the charged offense. Thus, the use of the phrase "judgment of acquittal" is not a bar to the State's appeal.
The order granting defendant's motion to suppress is affirmed. The Law Division shall enter an order for further proceedings as appropriate in the municipal court.
NOTES
[1] Oral argument was originally requested by respondent. At the request of the parties, oral argument was waived.