NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3797-13T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

GALE SORENSEN,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

February 27, 2015

APPELLATE DIVISION

Argued December 15, 2014 — Decided February 27, 2015

Before Judges Sabatino, Simonelli and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 12-098-W.

Paula Jordao, Assistant Prosecutor, argued the cause for appellant (Fredric M. Knapp, Morris County Prosecutor, attorney; Ms. Jordao, on the briefs).

Greggory M. Marootian argued the cause for respondent.

The opinion of the court was delivered by

LEONE, J.A.D.

In the Municipal Court, defendant Gale Sorensen entered a conditional plea of guilty to driving while intoxicated (DWI) with a blood alcohol content (BAC) of 0.12%.  N.J.S.A. 39:4-50(a)(1)(ii).  She appealed, and the Law Division suppressed the

Alcohol Influence Report (AIR) because the Alcotest operator did not provide a copy of the AIR to defendant at the police station, as mentioned in State v. Chun, 194 N.J. 54, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008). The State appeals. We reject defendant's argument that the State's appeal is barred by double jeopardy. We reverse the Law Division's suppression order and remand to the Municipal Court.

I.

New Jersey's statute barring driving while intoxicated penalizes "operat[ing] a motor vehicle while under the influence of intoxicating liquor," which is usually proven by observation of the person driving (an observation violation), and operating a motor vehicle with a BAC of 0.08% or more (a per se violation). N.J.S.A. 39:4-50(a). For a first-offense observation violation, a person is subject to a fine of $250 to $400, detainment for twelve to forty-eight hours in an Intoxicated Driver Resource Center (IDRC) program, a term of imprisonment of not more than thirty days, and a license suspension of three months. N.J.S.A. 39:4-50(a)(1)(i). A first offender who "operates a motor vehicle with a blood alcohol concentration of 0.08% [and less than 0.10%] by weight of alcohol in the defendant's blood" is subject to the same penalties. N.J.S.A. 39:4-50(a), (a)(1)(i). However, "if the

person's blood alcohol concentration is 0.10% or higher," a first offender is also subject to a fine of $300 to $500 and a license suspension of seven to twelve months. N.J.S.A. 39:4-50(a)(1)(ii).

The Legislature has provided that if a person who operated a motor vehicle gives a breath sample, "[a] record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested." N.J.S.A. 39:4-50.2(b). "The police officer shall inform the person tested of" the right to receive a copy on request, as well as the right "to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection." N.J.S.A. 39:4-50.2(c), (d).

The Legislature also provided that "[a] standard statement . . . shall be read by the police officer to the person under arrest." N.J.S.A. 39:4-50.2(e). The Standard Statement for Motor Vehicle Operators (Standard Statement) advises:

> 3. A record of the taking of the breath samples, including the test results, will be made. Upon your request, a copy of that record will be made available to you.
>
> 4. After you have provided samples of your breath for testing, you have the right, at your own expense, to have a person or

physician of your own selection take independent samples of your breath, blood or urine for independent testing.

[New Jersey Attorney General's Standard Statement For Motor Vehicle Operators (N.J.S.A. 39:4-50.2(e)) (revised & eff. July 1, 2012), available at http://www.njsp.org/divorg/invest/pdf/adtu/070912_dwi_standardstatement.pdf (hereinafter Standard Statement).][1]

In Chun, our Supreme Court found the Alcotest was a scientifically reliable breath test, and held its results could be admissible to prove a per se violation of the DWI statute. Chun, supra, 194 N.J. at 65. The Court said the Alcotest "operator must retain a copy of the AIR and give a copy to the arrestee." Id. at 82.

II.

On February 5, 2013, Patrol Officer Christopher Nelson observed defendant's vehicle "jump[]" into the left lane of Route 23, drift into the center and right lanes, and then drift back to the left lane, all without using a turn signal. When the officer turned on his emergency lights, defendant almost caused an accident trying to get to the shoulder. Her eyes were

---

[1] The 2012 version is slightly reworded from the 2004 version, which identically stated: "Upon your request, a copy of that record will be made available to you." New Jersey Motor Vehicle Commission Standard Statement For Operators Of A Motor Vehicle - N.J.S.A. 39:4-50.2(e) (revised & eff. Apr. 26, 2004), available at http://www.state.nj.us/oag/dcj/agguide/dmvrefnew.pdf.

A-3797-13T4

bloodshot and watery, her eyelids were droopy, and her vehicle smelled of alcohol. After she failed several psycho-physical sobriety tests, she was arrested for DWI. Patrol Officer William Juliano transported defendant to the police station for an Alcotest.

At the station, Officer Nelson read defendant the Standard Statement. Officer Juliano served as the Alcotest operator. While he observed defendant, she burped. After restarting the twenty-minute observation period, he conducted the test. The Alcotest equipment printed the AIR, which showed defendant's BAC was 0.12%. At the bottom of the AIR "Copy Given to Subject" was preprinted. The officer made a copy of the AIR and gave it to a superior officer, but did not give a copy to defendant.

Officer Juliano advised Officer Nelson of the test results. Officer Nelson then issued defendant summonses for "Driving While Intoxicated, [N.J.S.A.] 39:4-50," unsafe lane change, N.J.S.A. 39:4-88(b), and careless driving, N.J.S.A. 39:4-97.

Defendant appeared before the Municipal Court. At the beginning of the hearing, defense counsel announced that defendant was "conceding that the observations, the driving, the psycho-physical tests, [and] the other indicia are sufficient under the [DWI] statute to establish [she was] under the influence." Both sides agreed the issue was "a 90 day or a

seven month suspension," that is, whether defendant was guilty only of an observation violation, or also a per se violation. The parties agreed to hold a pre-trial hearing under N.J.R.E. 104 to determine the admissibility of the Alcotest BAC results. In the "104 hearing," Officer Nelson and Officer Juliano testified about the Alcotest, and were found credible by the court.

In the 104 hearing, defense counsel argued that the Alcotest results must be suppressed because Chun required that Officer Juliano provide the AIR to defendant in the station, and that defendant did not have to show any prejudice from his failure to do so. The prosecutor doubted whether any police department in the State gave a copy of the AIR to the arrestee.

The Municipal Court was concerned that a copy of the AIR was not given to defendant, as preprinted on the form, and urged the State to either give a copy of the AIR to arrestees, or change the form. However, the court ruled that failure to give defendant a copy of the AIR was not sufficient to suppress the BAC results. The court rejected defendant's other suppression arguments, including that defendant's burp compromised the test. The court admitted the AIR and the Alcotest results into evidence.

Defense counsel said defendant wanted to enter "a conditional guilty plea, in other words, conceding the observations as we discussed earlier." The Municipal Court made clear to defendant that the conditional plea would allow her to appeal the "decision concerning the 104 hearing and the [] admission of the Alcotest readings," but would not affect her "guilty plea as to the 90 day loss of license based on the observations." Defendant indicated she understood.

In her guilty plea colloquy, defendant admitted to driving "under the influence of alcohol" because she had "[o]ne glass of wine." The Municipal Court asked for more facts, and Officer Nelson gave the observation testimony above. The court found a factual basis for the guilty plea "based upon the statements of the defendant, as well as the officer in regard to observations." Under the plea bargain, the court dismissed the charges of careless driving and unsafe lane change.

The Municipal Court sentenced defendant to a fine of $306 and a license suspension of seven months based upon "the reading of .12 percent." The court also sentenced her to twelve hours detainment in the IDRC program, a $200 Drunk Driving Fund assessment, and various fees, surcharges, and court costs. On the ticket, the court noted ".12" and a "conditional plea." The court stayed the sentence pending appeal.

A-3797-13T4

Defendant appealed to the Law Division, where defense counsel argued that the Alcotest results had to be suppressed because of the burp and the failure to provide defendant a copy of the AIR at the police station. The prosecutor argued that the officer's reading of the Standard Statement informed defendant of her right to get a copy of the AIR, that Chun did not require the immediate presentation of the AIR, and that defendant was not prejudiced because she requested the AIR at the beginning of the legal proceedings and received it in a timely fashion.

The Law Division judge rejected defendant's argument about the burp. The court credited that Officer Nelson read defendant the Standard Statement, and that defendant was informed of her rights. However, the court ruled "defendant's motion to suppress is granted on the grounds that the State failed to provide a copy of the AIR at the time of the defendant's arrest as required by Chun."

The Law Division judge then stated "as I understand it there's no contest as to the observational standard." When defense counsel agreed, the court immediately proceeded to sentencing. The court stated that defendant had been "convicted under the observational standard," and imposed the required $250 fine and license suspension of three months. The court also

8

imposed a $6 assessment, a $100 Drunk Driving Fund assessment, and the same IDRC detainment, fees, surcharges, and court costs imposed by the Municipal Court. The Law Division's March 10, 2014 order stated "that Defendant's Motion to Suppress the Alcotest Results is GRANTED," and that defendant was guilty of DWI "under the observational standard."

This court granted the State's unopposed motion for leave to appeal. Meanwhile, defendant served the three-month license suspension, and then her driving privileges were restored.

### III.

We first address defendant's claim that the State's appeal is barred by double jeopardy. Defendant's argument is contrary to proper appellate procedure and double jeopardy law.

The Supreme Court addressed the proper appellate procedure in State v. Greeley, 178 N.J. 38 (2003). There, "[w]ith the prosecution's consent, defendant entered a conditional guilty plea [in Municipal Court], expressly preserving his right to challenge the denial of his motion to suppress the breathalyzer readings." Id. at 50. The Court held this was "the proper procedure" to preserve such an issue for appeal. Id. at 50-51. It allows a defendant to appeal the denial of the motion to the Law Division de novo, to this court, and to the Supreme Court. See id. at 42. If one of those courts grants defendant's

appeal, the State may appeal to a higher appellate court, which may reverse the suppression of the BAC results "and reinstate defendant's conviction." Id. at 40, 42.

Here, defendant admittedly entered not only a conditional plea to the per se violation, but also an unconditional guilty plea to the observation violation. Thus, when she appealed and the Law Division suppressed the BAC results, defendant's unconditional guilty plea to the observation violation was unaffected. The Law Division proceeded to sentence defendant on her observation violation, imposing the three-month license suspension required by N.J.S.A. 39:4-50(a)(1)(i). Nonetheless, under proper appellate procedure, the State retained the right to appeal the Law Division's suppression of the BAC results and to seek reinstatement of the Municipal Court's sentence for the per se violation.[2]

---

[2] Defendant, citing State v. Giordano, 281 N.J. Super. 150 (App. Div. 1995), notes that her motion to suppress the BAC results was not a motion to suppress physical evidence unlawfully obtained. That distinction required defendant to make her plea conditional to preserve an appeal. Greeley, supra, 178 N.J. at 50-51; see R. 7:6-2(c) (allowing conditional pleas); Pressler & Verniero, Current N.J. Court Rules, comment 2.4 on R. 7:6-2(c) (2015) (the adoption of Rule 7:6-2(c) "effectively overrules" Giordano). However, that distinction does not deprive the State of its right to appeal, as the State can appeal an interlocutory order excluding evidence before trial. R. 2:3-1(b)(5); State v. Ruffin, 371 N.J. Super. 371, 389 (App. Div. 2004).

Nevertheless, defendant contends that the State's appeal violates the constitutional prohibitions of double jeopardy. U.S. Const. amend. V, XIV; N.J. Const. art. I, ¶ 11; see State v. Widmaier, 157 N.J. 475, 489-96 (1999). She asserts the Law Division acquitted her of a per se violation. However, that court never purported to acquit defendant. Rather, the court simply reversed the denial of the motion to suppress the BAC results, and then sentenced defendant based on her unconditional plea to the observation violation.

Defendant argues that the Law Division's ruling was an acquittal regardless of its label. "Under both the state and federal double jeopardy clauses, an appeal from an acquittal is impermissible if 'the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" Widmaier, supra, 157 N.J. at 490 (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S. Ct. 1349, 1354-55, 51 L. Ed. 2d 642, 651 (1977)). However, the Law Division did not find defendant had a BAC of less than 0.10%, or otherwise resolve any of the factual elements of the per se violation. Instead, the court only ruled her 0.12% BAC result had to be suppressed because the operator did not give her a copy of the AIR in the police station.

In these circumstances, even if the Law Division had said defendant was "acquitted" or "not guilty," it would not have affected the State's ability to appeal. In State v. Sohl, 363 N.J. Super. 573, 574 (App. Div. 2003), the defendant entered a conditional plea to a per se violation in Municipal Court, and appealed to the Law Division. The Law Division suppressed the BAC results, "'reversed' the conviction of the municipal court and entered a judgment of 'not guilty.'" Id. at 575. The State appealed.

We ruled that, "[a]s defendant entered a conditional guilty plea in municipal court, the Law Division judge should not have entered a judgment of acquittal." Id. at 580-81 (citing State v. Golotta, 354 N.J. Super. 477, 483 (App. Div. 2002), rev'd on other grounds, 178 N.J. 205 (2003)). "The de novo appeal of the motion was limited to the legal issue of the admissibility of the [BAC results]. The case was not heard on its merits." Id. at 581. "The Law Division judge was empowered to make his findings and, upon reversal of the municipal court's ruling, return the case to the municipal court for further proceedings in accordance with his ruling." Ibid.[3] Because the Law Division

_____

[3] We cited Rule 7:6-2(c), which provides that "a defendant may enter a conditional plea of guilty, reserving on the record the right to appeal from the adverse determination of any specified
(continued)

failed to remand, the "[d]efendant did not return to the municipal court where his plea remained viable. He did not retract his guilty plea. Therefore, the Law Division judge was unable to enter a finding of not guilty as defendant's plea of guilt remained entered upon the record in municipal court." Ibid. Thus, in Sohl, we reversed the suppression ruling and remanded to the Municipal Court, "where defendant is to comply with the terms of his sentence." Ibid.

In Golotta, supra, 354 N.J. Super. at 480, the Law Division similarly reversed a denial of suppression and entered a "judgment of acquittal." We rejected "defendant's argument that [the State's] appeal is barred by the constitutional prohibition against double jeopardy." Id. at 484. We stressed that "[t]he State will be barred from seeking review of an acquittal only 'if the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" Ibid. (quoting Widmaier, supra, 157 N.J. at 490 (internal quotation marks omitted)). We held that "[t]he disposition by the Law Division judge of the motion to suppress was in no sense a resolution of the merits of the charged offense. Thus, the use of the phrase

_____

(continued)
pretrial motion. A defendant who prevails on appeal shall be afforded the opportunity to withdraw the guilty plea."

'judgment of acquittal' is not a bar to the State's appeal." Ibid. Although we affirmed on the merits, ibid., the Supreme Court addressed the State's appeal on the merits and reversed the suppression ruling. State v. Golotta, 178 N.J. 205, 209, 229 (2003).

Under Golotta and Sohl, the State's appeal does not violate double jeopardy. Defendant notes that double jeopardy is meant to prevent the State from making "repeated attempts to convict the accused." State v. Barnes, 84 N.J. 362, 370 (1980). However, the State's appeal here will not result in multiple trials. If we reverse the Law Division's suppression ruling, defendant remains subject to a valid conditional guilty plea to the per se violation, and we need only remand to the Municipal Court so that defendant can "comply with the terms of [that court's] sentence" under N.J.S.A. 39:4-50(a)(1)(ii). Sohl, supra, 363 N.J. Super. at 581.

Defendant's conditional guilty plea distinguishes this case from the cases cited by defendant in which a trial and acquittal regarding a DWI charge barred a subsequent conviction on the same DWI charge. E.g., State v. Cuneo, 275 N.J. Super. 16, 18, 22 (App. Div. 1994); State v. Costello, 224 N.J. Super. 157, 159 (App. Div.), certif. denied, 111 N.J. 596 (1988); State v. Lanish, 103 N.J. Super. 441, 442-44 (App. Div. 1968), aff'd

o.b., 54 N.J. 93 (1969); cf. State v. Kashi, 360 N.J. Super. 538, 544-45 (App. Div. 2003) (distinguishing Lanish), aff'd o.b., 180 N.J. 45 (2004).[4] Here, the State's appeal will not subject defendant "to a conviction after an acquittal, or to the possibility of conviction of a more serious offense, or of an offense carrying a higher penalty" than the per se violation to which she pled guilty. State v. Kashi, 180 N.J. 45, 48-49 (2004). Therefore, we hold there is no double jeopardy violation.

IV.

We now turn to the merits of the Law Division's interpretation of Chun. "A trial court's interpretation of the law" is "not entitled to any special deference," and its "legal conclusions are reviewed de novo." State v. Gamble, 218 N.J. 412, 425 (2014). We hew to that standard of review.

The Law Division ruled that "the failure of the State to provide the defendant with a copy of the AIR on the date of [her] arrest warrants suppression of the proffered BAC results." The court reasoned that Chun's "use of the term 'arrestee' rather than defendant contemplates that a copy of the AIR be

---

[4] Defendant also cites unpublished appellate opinions that dismissed State appeals. We are not bound by, and do not cite, unpublished opinions. R. 1:36-3. In any event, those defendants did not enter a conditional guilty plea, but went to trial in the Municipal Court.

given to the individual while under arrest, and not at a later time upon request or during discovery once charges are brought against the defendant."  The court found support in the report of the Alcotest Special Master.  King, P.J.A.D., Special Master, Findings and Conclusions Submitted to N.J. Supreme Court (Feb. 13, 2007) (hereinafter Special Master's Report), reprinted in State v. Chun, No. 58, 879, 2007 N.J. LEXIS 39 (Feb. 13, 2007) ("LEXIS").[5]  The Special Master's Report noted: "With the Alcotest 7110 a permanent record, the AIR, is printed out and a copy given to the suspect after the test is completed."  Id. at 248, LEXIS at *285.

However, the Special Master's comment was not a recommendation of a legal requirement.  Rather, it is part of his technical comparison of the Alcotest machine and the breathalyzer machine.  Specifically, the comment occurs in his discussion of why, "[u]nlike the breathalyzer, the Alcotest 7110 is not operator dependent."  Ibid., LEXIS at *284.  The breathalyzer only showed the BAC results "where the needle indicator stopped on the dial," and the "operator simply wrote down his observation of the reading."  Ibid., LEXIS at *285.  By

---

[5] We will note the LEXIS page number for the convenience of the reader.

contrast, the Alcotest machine is attached to a printer which automatically prints an AIR containing the results. Ibid.

As the Special Master stated: "No contemporaneous, machine-generated permanent record was produced by the breathalyzer. With the Alcotest 7110 a permanent record, the AIR, is printed out and a copy given to the suspect after the test is completed." Ibid. The Special Master's emphasis was that the Alcotest's "entire process is automatic," resulting in "accuracy, contemporary documentation of the result, and elimination of the ability of the operator to falsify or exaggerate the test outcome. This independence from potential operator influence and a permanent machine-printed record are decided advantage over the breathalyzer." Id. at 249, LEXIS at *285-86.

Further, the Special Master's comment about giving a copy of the AIR to the suspect derived not from the law, but from the practices of the Alcohol Drug Testing Unit (ADTU) of the New Jersey State Police. "The ADTU instructs operators to give one copy to the local police department, retain one copy, and give a copy to the subject." Id. at 43, LEXIS at *48. "Upon completion of a test, the ADTU recommends that the operator give a copy of the AIR to the subject." Id. at 116-17, LEXIS at

*135-36. The Special Master made no mention of requiring such a practice in his findings of fact or conclusions of law.

Our Supreme Court's comment that the "operator must retain a copy of the AIR and give a copy to the arrestee" was similarly part of a technical discussion, not a legal discussion. See Chun, supra, 194 N.J. at 82. The comment came in the section of the Court's opinion addressing "How the Alcotest Works." Id. at 75-84. The Court made the comment as part of its "description of the manner in which the device operates in practice," discussing "[o]ne of the claimed advantages of the Alcotest, as compared to the breathalyzer, [namely] that it is not operator-dependent." Id. at 79.

The Court did not reference that comment again in its lengthy and thorough opinion. Most pointedly, there was no mention of the comment in the Court's detailed section addressing its "Requirements Prior to the Admissibility of Alcotest Evidence," id. at 134-49, including its requirements for "Alcohol Influence Report Admissibility," id. at 145. Further, no such requirement is mentioned in the Court's extensive order specifying conditions under which the AIR "is admissible as evidence of" a defendant's BAC. Id. at 149-54. Although that section and the order required the "foundational documents" to be produced in discovery, id. at 134-35, 144-45,

148, 153, they did not similarly dictate when the AIR had to be produced. Thus, the context in which the Court made, and did not make, its comment suggests that it was not establishing a legal requirement, despite the word "must."[6]

We recognize that "'an expression of opinion on a point involved in a case, argued by counsel and deliberately mentioned by the court, although not essential to the disposition of the case . . . becomes authoritative[] when it is expressly declared by the court as a guide for future conduct.'" State v. Rose, 206 N.J. 141, 183 (2011) (quoting 21 C.J.S. Courts § 230 (2006)). Even "well-reasoned dictum" from our Supreme Court is "worthy of and entitled to the utmost respect. Indeed, as an intermediate appellate court, we consider ourselves bound by carefully considered dictum from the Supreme Court." State v. Breitweiser, 373 N.J. Super. 271, 282-83 (App. Div. 2004), certif. denied, 182 N.J. 628 (2005); see State v. Dabas, 215 N.J. 114, 136-37 (2013).

---

[6] In analyzing legislation, "the words 'must' and 'shall' are generally mandatory." Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 391 (1959). However, that "presumption is not a conclusive one" and it can "be overthrown by something in the character of the legislation or in the context which will justify a different meaning." Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166 (1954); e.g., Franklin Estates, Inc. v. Twp. of Edison, 142 N.J. Super. 179, 184-85 (App. Div. 1976), aff'd o.b., 73 N.J. 462 (1977); see State v. Thomas, 188 N.J. 137, 149-50 (2006) (citing Norman J. Singer, 1A Sutherland Statutes and Statutory Construction § 25:4 (6th ed. 2000)).

Here, however, we are faced with a countervailing command, namely the Legislature's specific determination of when a copy of breath test results must be given to the person tested. The Legislature provided that "a copy thereof . . . shall be furnished or made available to the person so tested" "upon his request." N.J.S.A. 39:4-50.2(b). That statutory requirement has long been the controlling law, and is reflected in the statutorily-required Standard Statement. "'Once the Legislature has made that decision, and has made it within constitutional bounds, our sole function is to carry it out.'" State v. French, 437 N.J. Super. 333, 337 (App. Div. 2014) (quoting State v. Des Marets, 92 N.J. 62, 65-66 (1983)).

We do not believe the Legislature would have mandated that the police turn over a copy of the breath test results upon request, or that the police tell the persons tested they have a right to receive a copy upon request, if the Legislature believed the police were also required to give a copy simultaneously to those same persons. If the Legislature had intended that the police be required to give a copy to the persons tested at the police station, we see no reason why the Legislature would not have stated that requirement in N.J.S.A. 39:4-50.2, rather than only requiring the police to provide a copy upon request. If the Legislature had intended to give the

persons tested the right to automatically receive a copy at the police station, we see no reason why the Legislature would have required the police to advise the persons tested only that they had the right to get a copy if they made a request. Regardless of the merits of providing the persons tested with a copy of the breath test results at the police station, or requiring the police to do so without a request, it does not appear that the Legislature envisioned that requirement or intended to impose it, and we cannot interpret N.J.S.A. 39:4-50.2 to encompass such a requirement. See State v. Williams, 218 N.J. 576, 586 (2014).

After carefully reviewing Chun, we cannot find that our Supreme Court deliberately intended to contravene the statutory standard in N.J.S.A. 39:4-50.2(b). The Court did not cite N.J.S.A. 39:4-50.2 or the Standard Statement. The Court gave no inkling that it considered and replaced the Legislature's standard that a copy of the breath test must be provided to the tested person only "upon request," ibid., with a requirement that the copy must be furnished to the tested person at the police station without a request. The Court's opinion contains no reasoning why the Legislature's standard could be superseded. Although the Court stated that some "conditions upon admissibility we impose as a matter of constitutional imperative," Chun, supra, 194 N.J. at 65, the Court never

referenced providing a copy at the police station as one of those conditions, or indicated that providing a copy on request would be constitutionally inadequate. Nor did the Court invoke its "supervisory powers over the administration of criminal justice" to justify such a change. See State v. Ramseur, 106 N.J. 123, 252 n.56 (1987) (declining to exercise its supervisory powers because "[t]he Legislature has spoken in this area"). We believe that if the Supreme Court had intended to change the Legislature's standard, it would have referenced N.J.S.A. 39:4-50.2(b) and expressly explained that it was altering the statutory standard and that the Standard Statement should be similarly revised.

Indeed, subsequent cases contain no indication that the Court made such a change. Three times since Chun, our Supreme Court has discussed at length the requirements of N.J.S.A. 39:4-50.2 and the adequacy and accuracy of the Standard Statement. State v. O'Driscoll, 215 N.J. 461, 465-81 (2013) (addressing the reading of an outdated Standard Statement with incorrect penalties); State v. Schmidt, 206 N.J. 71, 72-89 (2011) (addressing the alleged incompleteness of the Standard Statement); State v. Marquez, 202 N.J. 485, 489-515 (2010) (addressing the need to make the Standard Statement intelligible to the suspect); see also State v. Spell, 196 N.J. 537, 538-40

(2008) (addressing suggested changes to the Standard Statement). The Court quoted and referenced the Standard Statement's language that a copy of the test results will be provided "on request" under N.J.S.A. 39:4-50.2(b). Schmidt, supra, 206 N.J. at 75, 82; accord O'Driscoll, supra, 215 N.J. at 467; Marquez, supra, 202 N.J. at 492, 500.

For all these reasons, we hold that the Court's terse comment in Chun did not reject N.J.S.A. 39:4-50.2(b)'s standard for when a police officer is required to provide a copy of the results of a breath test.[7] Nor do we feel it appropriate to rewrite N.J.S.A. 39:4-50.2(b) ourselves.[8] Accordingly, we reject the Law Division's finding of error.

## V.

In any event, Chun did not discuss whether disclosure of the AIR on request, rather than in the police station, would

---

[7] We note that a leading treatise states that although "[p]olice are trained to retain a copy of the AIR and to give a copy to the defendant," and cites Chun, supra, 194 N.J. at 82, it reaffirms "[t]echnically, a test subject must request a copy of the results," and cites N.J.S.A. 39:4-50.2(b). Robert Ramsey, New Jersey Drunk Driving Law § 10:20 at 381 & n.1 (2014).

[8] Unlike the Supreme Court, "we have no supervisory authority over courts and no rulemaking power." State v. Spell, 395 N.J. Super. 337, 348 n.8 (App. Div. 2007) (nonetheless requiring officers to read an additional paragraph of the Standard Statement), aff'd as modified, 196 N.J. 537, 539 (2008) (holding that "the Appellate Division exceeded its mandate" by requiring officers to read the additional paragraph).

require suppression. We hold that suppression of the AIR is not an appropriate remedy in the absence of prejudice.

The Law Division suggested that suppression was required because Chun "demanded that, as a precondition for admissibility of the results of a breathalyzer, the State was required to establish that: (1) the device was in working order and had been inspected according to procedure; (2) the operator was certified; and (3) the test was administered according to official procedure." Chun, supra, 194 N.J. at 134 (citing Romano v. Kimmelman, 96 N.J. 66, 81 (1984)).

Here, it was undisputed that the Alcotest device "was in good working order and that the operator of the device was appropriately qualified to administer the test." Ibid. Furthermore, the Municipal Court and the Law Division found that the test itself "was administered according to official procedure." Ibid. Both courts rejected defendant's challenges to the procedure of the test itself.

By contrast, the issue here concerns only the timing of when a person receives a copy of the AIR — at the police station, on request, or in discovery. It in no way affects the validity of the already-completed Alcotest, or the already-recorded BAC. Delivery of a copy thus differs from the protocol designed to ensure the Alcotest is properly conducted and the

test results are accurate. The Special Master stated that "the multiple-step testing protocol must be meticulously followed before the test result is admitted in evidence," and "[i]f the test protocol or instructions are violated in any respect, the BAC reading must be rejected as evidence." Special Master's Report, supra, at 230, 234, 242, LEXIS at *267, 271, 280. He did not state that the timing of copy delivery should invalidate a valid test.

Defendant here expressly declined to make a showing of prejudice from receiving the AIR at the beginning of the litigation rather than at the police station. Therefore, we see no basis to suppress her valid test results. See State v. Wolfe, 431 N.J. Super. 356, 363 (App. Div. 2013) (refusing to exclude the AIR, despite the State's delay in providing a copy of the Alcotest foundational documents to the defendant, because he made "no significant argument of prejudice"), certif. denied, 217 N.J. 285 (2014).

The Law Division also asserted that suppression was warranted because "failing to provide a copy of the AIR substantially interferes with the defendant's right to obtain independent testing under N.J.S.A. 39:4-50.2. By [] immediately providing a copy of the results, the individual is given a meaningful opportunity to challenge the results of the AIR."

Thus, the Law Division reasoned, "the failure to give the AIR deprives the defendant of a potential defense[.]"[9]

However, a tested person does not need a copy of the AIR to obtain independent testing under N.J.S.A. 39:4-50.2(c). Since 1982, N.J.S.A. 39:4-50.2(c) has provided that "the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection." Ibid. Defendants long have exercised that right without getting a copy of the breath test results at the police station.

Furthermore, the AIR does not advise a tested person of their right to obtain independent testing. Rather, pursuant to N.J.S.A. 39:4-50.2(e), that advice is given when the officer reads the Standard Statement to the person, stating "you have the right, at your own expense, to have a person or physician of your own selection take independent samples of your breath, blood or urine for independent testing." Standard Statement, supra. The Law Division found that Officer Nelson read the Standard Statement to defendant. She has never contended she was unaware of her right to independent testing or was prevented

_____

[9] We read the Law Division as referring solely to the opportunity to contradict the Alcotest BAC results through independent testing. A defendant who receives the AIR upon request, including in discovery, has ample opportunity to challenge whether the Alcotest was properly conducted.

from exercising it because she did not get a copy of the AIR at the police station.

We recognize that giving tested persons a copy of the AIR at the police station informs them of their BAC results, as well as details about the test. However, the State long used breathalyzers which did not produce a printout with the BAC results. Nevertheless, neither the Legislature in drafting N.J.S.A. 39:4-50.2(b), nor the Executive Branch in crafting the Standard Statement, found the right of independent testing required officers to inform persons at the police station of the BAC found by a breath test. Other than advising a defendant of the rights expressly set forth in N.J.S.A. 39:4-50.2(b) and (c), "the statute sets forth no other affirmative duties on the part of the police." Greeley, supra, 178 N.J. at 43; see State v. Howard, 383 N.J. Super. 538, 549 (App. Div.), certif. denied, 187 N.J. 80 (2006).

Defendant already had an incentive to obtain independent testing to show she was not driving with an elevated BAC. She knew that her breath had been tested for BAC, and that she was being charged with drunk driving. An independent test might contradict any BAC found by the State's Alcotest, or undermine any testimony that she was observed "operat[ing] a motor vehicle

27                                                          A-3797-13T4

while under the influence of intoxicating liquor," N.J.S.A. 39:4-50(a)(1).

In any event, it is defendant's burden to show that she would have sought independent testing absent the allegedly improper police conduct, and that "such an examination could have been conducted in a reasonable period of time so as to produce relevant or probative evidence." State v. Hicks, 228 N.J. Super. 541, 551 & n.4 (App. Div. 1988), certif. denied, 127 N.J. 324 (1990); see State v. Jalkiewicz, 303 N.J. Super. 430, 434-35 (App. Div. 1997). "[S]o long as a defendant is informed of the right to an independent test, police conduct will warrant suppression of BAC test results only if that conduct affirmatively interferes with or thwarts a defendant's good-faith attempt to obtain an independent test." Greeley, supra, 178 N.J. at 45. Here, defendant has failed to carry her burden to show such prejudice, or that the police conduct "render[ed] the statutory right meaningless." Id. at 43; see Hicks, supra, 228 N.J. Super. at 549. Because there was no "arbitrary deprivation of the right to an independent test, we reverse the [Law] Division's judgment suppressing the breath[] results and reinstate defendant's conviction." Greeley, supra, 178 N.J. at 50.

Our decision is supported by consideration of the cost and benefit of suppressing the AIR that showed defendant's blood alcohol level was 0.12%. Even when constitutional protections against search and seizure are at stake, courts: consider that "'[t]he exclusionary rule generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large'"; are "'cautious against expanding it'"; and apply it only "'where its deterrence benefits outweigh its substantial social costs.'" State v. Gioe, 401 N.J. Super. 331, 339 (App. Div. 2008) (quoting Hudson v. Michigan, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163, 165 L. Ed. 2d 56, 64 (2006)), certif. denied, 199 N.J. 129 (2009). "Sometimes, the cost of excluding evidence is not justified by the rule and its purposes." State v. Herrerra, 211 N.J. 308, 330 (2012). Such an analysis is even more crucial where no constitutional rights are at issue, as here. E.g., Gioe, supra, 401 N.J. Super. at 341-44 (declining to suppress evidence seized in violation of a rule).

Suppressing a defendant's valid BAC results, and eliminating or substantially reducing the license suspension, subjects the public to a danger the Legislature sought to prevent. "[T]he primary purpose behind our drunk driving laws is to remove intoxicated drivers from our roadways and thereby

'to curb the senseless havoc and destruction' caused by them." Chun, supra, 194 N.J. at 71 (quoting State v. Tischio, 107 N.J. 504, 512 (1987)). The Legislature created the per se offense of driving with a BAC of 0.10% or higher "to take into account 'mounting scientific findings,' to the effect that almost all drivers suffered reduced driving ability at a BAC of 0.10 percent." Id. at 72 (quoting Tischio, supra, 107 N.J. at 516). The Legislature subsequently increased the period of license suspension for a first-offender to seven months. Id. at 74. License suspensions "'are mainly designed to protect the public by removing the offenders from the road.'" N.J. Div. of Motor Vehicles v. Egan, 103 N.J. 350, 357 (1986).

On the other hand, providing a copy of the AIR to the suspect at the police station, rather than on request or in discovery, may produce benefits in limited circumstances. Persons being breath tested may be intoxicated, experiencing their first arrest, and unrepresented by counsel. Providing a copy of the AIR at the police station may benefit persons who, despite hearing the Standard Statement, fail to understand their right to request a copy, and do not make a request themselves, through counsel, or in discovery. Here, defendant did not claim she failed to understand the Standard Statement.

Given the significant costs of suppressing valid BAC results, the limited benefits of the new obligation defendant seeks to impose, and her failure to show prejudice, we find suppression unwarranted.

## VI.

In any event, we would not apply a new obligation requiring suppression retroactively. "'[A] case announces a new rule when it breaks new ground or imposes a new obligation on the State[.]'" State v. Molina, 187 N.J. 531, 543 (2006). The "'purpose of the [new] rule'" must be weighed against "'the degree of reliance placed on the old rule'" and "'the effect a retroactive application would have on the administration of justice.'" Ibid. Here, law enforcement has long relied on N.J.S.A. 39:4-50.2(b). Moreover, given the many Alcotests performed since the Attorney General approved the Alcotest for use in 1999, see 31 N.J.R. 770(b) (eff. Feb. 19, 1999), retroactivity could have a substantial effect and "would expose the judicial system to the undue burden of resolving numerous concluded matters," Olds v. Donnelly, 150 N.J. 424, 450 (1997).

Further, "new procedural rules generally do not apply retroactively." State v. J.A., 398 N.J. Super. 511, 526 (App. Div.), certif. denied, 196 N.J. 462 (2008). Moreover, where "the predominant purpose of the new rule is to deter illegal

police conduct," that "deterrence purpose will not be appreciably advanced by retroactive application to police conduct that has already occurred, [and] the new rule will be given prospective effect only." State v. Young, 87 N.J. 132, 141 (1981).

In addition, as set forth above, the timing of when a person receives a copy of the AIR has no effect on the reliability or accuracy of the already-determined test results. Thus, the new rule is not "'designed to enhance the reliability of the factfinding process,'" and "'the old rule did not "substantially" impair the accuracy of [the fact-finding] process.'" State v. Fortin, 178 N.J. 540, 648 (2004).

Based on all those considerations, if we were to adopt a new rule imposing such an obligation and requiring suppression, we would apply it "prospectively only." Molina, supra, 187 N.J. at 543. Accordingly, "the AIR report resulting from [defendant's] test" would still be "admissible against [her]." State v. Pollock, 407 N.J. Super. 100, 107 (App. Div. 2009) (applying only prospectively Chun's recalibration requirement for the Alcotest).

## VII.

Although we reverse the suppression ruling here, we recognize that providing the tested person with a copy of the

AIR at the police station does provide benefits in limited circumstances, as set forth above. Moreover, it may not require significant effort by law enforcement to provide a copy of the AIR to the arrestee at the police station. Like the State Police ADTU, the Attorney General recommends that "the defendant should be given a copy of the [AIR]."[10] We urge all law enforcement officers to follow their recommendations.

We reverse the suppression order of the Law Division, and remand to the Municipal Court for defendant to comply with the terms of the sentence that court imposed for her per se violation under N.J.S.A. 39:4-50(a)(1)(ii).

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] Attorney General Guideline: Prosecution of DWI & Refusal Violations, at 20, (Jan. 24, 2005), available at http://www.state.nj.us/lps/dcj/agguide/d-10jd-dwi-2005.pdf.

_____

**SABATINO, P.J.A.D., concurring.**

I join in the result, which reinstates this defendant's conviction of a DWI offense under N.J.S.A. 39:4-50(a)(1)(ii). I write separately because I differ with portions of the main opinion's discussion within Parts IV and V.

My colleagues rightly acknowledge that "providing a copy of the AIR to the suspect at the police station, rather than on request or in discovery, may produce benefits in limited circumstances." Ante at __ (slip op. at 30). They also properly recognize that both the State Police and the Attorney General prescribe the AIR be supplied contemporaneously to the arrestee when the test is completed. Id. at __ (slip op. at 33). They also recognize, as the State's attorney conceded before us at oral argument, that supplying the AIR to an arrestee on the spot is not apt to impose a great burden on the police. Ibid. They urge, as I do, that this recommended practice be followed. Ibid.

I part company with my colleagues because I support the Law Division judge's conclusion that immediate turnover of the AIR to an arrestee should be more than an aspirational goal. Because alcohol in a human's body dissipates quickly, time is of the essence. See Missouri v. McNeely, ___ U.S. ___, ___, 133 S. Ct. 1552, 1560, 185 L. Ed. 2d 696, 706 (2013) ("It is true that

as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated."); Schmerber v. California, 384 U.S. 757, 771, 86 S. Ct. 1826, 1836, 16 L. Ed. 2d 908, 920 (1966) (noting that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system"); see also Chun, ante, 194 N.J. at 76 (stating that "[e]limination of alcohol also starts as soon as the person begins to drink").

An arrestee's right to obtain an independent test to challenge the police's AIR readings is essentially worthless if the arrestee does not act right away. The AIR contains various forms of material information, including the critical BAC levels that can indicate whether it might be worthwhile for the driver to take immediate action to obtain an independent test or to have her blood drawn for that purpose. See Chun, ante, 194 N.J. at 82-83 (describing the information contained in the AIR); see also Ramsey, N.J. Drunk Driving Law, ante, § 10:25 at 390 (stating that "[t]he alcohol influence report (AIR) is the key piece of discovery in an Alcotest 7110 case").

For instance, if the BAC levels are borderline, an independent test potentially might produce levels that are below

the legal limits, thereby rebutting the State's burden to prove guilt of DWI beyond a reasonable doubt. State v. Campbell, 436 N.J. Super. 264, 269 (App. Div.) (stating that "we have long required the State to establish the elements of a DWI offense by the heightened criminal standard of proof beyond a reasonable doubt"), certif. denied, ___ N.J. ___ (2014). Conversely, the AIR may show that the driver's BAC is way above the limits, and further indicate no irregularity on its face, thereby suggesting that independent testing will be a fruitless exercise.

Because DWI based on BAC levels is essentially a strict liability offense, the arrestee should act quickly, most likely in an emergent telephone consultation with an attorney, to decide whether to pursue independent testing. It is therefore important that the AIR be turned over to the arrestee as soon as the report is generated by the Alcotest device. In fact, the standard documents presently used statewide in the process reflect that a copy of the AIR is to be given on the spot to the driver. See ante at ___ (slip op. at 5) (noting, in this case, the printing of the phrase "Copy Given to Subject" at the bottom of the AIR).

Unlike my colleagues, I am not persuaded that the "on request" language in N.J.S.A. 39:4-50.2(b) should be read to signify that the police are to turn over the AIR report only

upon an arrestee's request.[1]  Of course, if an arrestee makes such a request, the report certainly should be supplied.  That said, I doubt that the Legislature has foreclosed the Judiciary, within its supervisory authority over the adjudication of DWI cases, from directing that the AIR be routinely turned over after the test has been administered, regardless of whether the arrestee specifically requests it.  What could be the harm in that?

I do not construe the statute to require the police to withhold the AIR unless the arrestee specifically requests it.  Nor do I read the statute to preclude the Judiciary from enhancing the procedural protections afforded to the tested driver.  Indeed, the Supreme Court imposed in Chun various procedural and administrative requirements concerning the use of the Alcotest that go beyond what the statutes explicitly require.  See Chun, ante, 194 N.J. at 145 (noting, among other things,  that the State must produce the most recent calibration report, the most recent new standard solution report, and the certificate of analysis of the 0.10 simulation solution used in defendant's test prior to admission of the AIR).

---

[1] The present situation differs from Spell, ante, 395 N.J. Super. at 337, cited by my colleagues, see ante __ (slip op. at 23), because automatic turnover of the AIR is, in my view at least, mandated by the Supreme Court in Chun, ante, 194 N.J. at 82-83, and is not an innovation being crafted by this court.

Like the Law Division judge, I read the Court's statement in <u>Chun</u> that the Alcotest "operator must retain a copy of the AIR and give a copy to the arrestee," <u>id.</u> at 82, as a sensible mandate, not a mere recommendation. The term "must" within that passage is consistent with that interpretation. <u>See</u> <u>Thomas</u>, <u>ante</u>, 188 <u>N.J.</u> at 149-50; <u>Harvey</u>, <u>ante</u>, 30 <u>N.J.</u> at 391 (observing that generally "the words 'must' and 'shall' are . . . mandatory"). It is also consistent with the <u>Special Master's Report</u>, <u>ante</u>.

If the Supreme Court did not intend to require contemporaneous turnover of the AIR, or if it agrees with my colleagues that the statute forbids such a judicial gloss, then perhaps the Legislature might revise <u>N.J.S.A.</u> 39:4-50.2(b) to require such automatic turnover. Doing so would be in the interests of justice, fairness, and the attainment of evidentially-sound dispositions in DWI cases.

Despite the grave dangers and undeniable societal costs of drunk driving, it is well established that judicial suppression of BAC results may be an appropriate remedy in certain cases. <u>See</u> <u>McNeely</u>, <u>supra</u>, ___ <u>U.S.</u> at ___, 133 <u>S. Ct.</u> at 1567-68, 185 <u>L. Ed.</u> 2d at 714-15; <u>see also</u> <u>Chun</u>, <u>ante</u>, 194 <u>N.J.</u> at 145-49. Of course, the State may still prove guilt by other means, such as observation evidence, as potentially could have been done

here. See, e.g., State v. Kent, 391 N.J. Super. 352, 383-85 (App. Div. 2007).

That said, I do not construe the law to require the automatic suppression of an Alcotest's BAC readings in every instance where, as in the present case, the police slip up and neglect to give the AIR contemporaneously to the arrested driver. As my colleagues point out, suppression of the BAC readings is not an appropriate remedy unless a defendant shows that a procedural error caused him or her actual prejudice. Ante at ___ (slip op. 24); see also Greeley, ante, 178 N.J. at 45-46.

No such actual prejudice is demonstrated in the present record, in which defendant's BAC reading of .12 is not borderline and where no arguable irregularity on the face of the AIR has been identified. In this respect, I believe the Law Division judge erred in treating the lack of turnover of the AIR as a compulsory basis for suppression. Instead, a case-by-case assessment of prejudice should be undertaken before the Alcotest results are excluded. An inconsequential failure by the police to turn over the AIR report at the station house should not jeopardize an otherwise valid DWI prosecution.

I also agree with my colleagues, see ante at ___ (slip op. at 31-32), that principles of suppression, if they were to be

adopted in this context, would be prospective only, thereby affording law enforcement officials a reasonable opportunity to adjust to such potential future consequences. Since the Office of Attorney General (which, notably, is also the issuer of the Standard Statement that must be read to the arrestee) and the State Police already call for the AIR to be turned over on the spot to arrestees, it does not appear that a lengthy period of transition would be required.

Having made these observations, I join in the reversal of the Law Division's judgment insofar as it vacated defendant's conviction under N.J.S.A. 39:4-50(a)(1)(ii).

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION