NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0568-16T4

KRISTY BOWSER,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE AND
FIREMEN'S RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

> APPROVED FOR PUBLICATION
>
> June 13, 2018
>
> APPELLATE DIVISION

Argued May 14, 2018 — Decided June 13, 2018

Before Judges Sabatino, Ostrer and Rose.

On appeal from the Board of Trustees of the
Police and Firemen's Retirement System,
Department of the Treasury, PFRS No. 3-10-
050623.

Samuel M. Gaylord argued the cause for
appellant (Gaylord Popp, LLC, attorneys;
Samuel M. Gaylord, on the brief).

Robert E. Kelly, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Melissa
H. Raksa, Assistant Attorney General, of
counsel; George E. Loeser, Deputy Attorney
General, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

The Police and Firemen's Retirement System Board of
Trustees denied Kristy Bowser an accidental disability pension.

Without dispute, she was "permanently and totally disabled as a direct result of a traumatic event" at the Mercer County Correctional Center (MCCC), where she was a correctional officer. See N.J.S.A. 43:16A-7(1). She suffered her disabling injury by falling on an icy patch near the MCCC's parking lot. The sole question in Bowser's appeal is whether the Board erred in finding that her fall did not "occur[] during and as a result of the performance of [her] regular or assigned duties . . . ." Ibid.

Bowser fell while retrieving feminine hygiene products from her car. She needed them while, unexpectedly, serving a second consecutive shift. We conclude she suffered her injury during the equivalent of a restroom break "within the confines of the workday at the work location." Kasper v. Bd. of Trs. of the Teachers' Pension & Annuity Fund, 164 N.J. 564, 586 n.7 (2000). The Supreme Court stated such restroom breaks are included within "the performance of an employee's actual duties . . . ." Id. at 585-86. We therefore reverse.

## I.

Bowser was the sole witness in the hearing before the Administrative Law Judge (ALJ). Her testimony was undisputed. Bowser was a fourteen-year veteran of the Mercer County Corrections department when the accident occurred. On the day

of the accident, she had worked her assigned 11:00 p.m. to 7:00 a.m. shift overseeing inmates in a housing unit. During that shift, her commander told her she had to work another eight-hour shift on a detention floor, starting at 7:00 a.m., because another officer "called out." At about 7:30 a.m., Bowser asked a fellow officer on the detention floor to cover for her, as she would if she had to use the restroom. Bowser needed to run to her car to retrieve feminine hygiene products because she was menstruating. As with a bathroom break, Bowser did not "clock out" when she went to her car, and was paid for the break time.

Her car was parked on the MCCC grounds, in an area reserved for corrections officers. On the way to her car, while walking near an internal service road on MCCC grounds, she slipped on black ice and fell. She was about fifteen to twenty feet from the jail. Another officer who happened to be arriving helped her get up. She continued to her car, then returned to the building, went to the restroom, and "got [herself] back together." Fifteen or twenty minutes later, her commander relieved her for the day, as someone arrived to perform the shift.

The Board stipulated that Bowser was totally and permanently disabled from performing her regular and assigned job duties. It also stipulated that her disability directly

resulted from her fall, and her fall did not result from her willful negligence. In his proposed decision, the ALJ found that Bowser's injury was undesigned and unexpected, and it occurred "during and as a result of the performance of [her] regular or assigned duties." See N.J.S.A. 43:16A-7(1). In so doing, the ALJ rejected the Board's initial position to the contrary on both points.

In sum, the ALJ found that Bowser met the five requirements for receiving an accidental disability pension, which the Court identified in Richardson v. Board of Trustees, Police and Firemen's Retirement System, 192 N.J. 189, 212-13 (2007):

> 1. that [s]he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>     a. identifiable as to time and place,
>     b. undesigned and unexpected, and
>     c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.

In its final decision denying Bowser an accidental disability pension, the Board agreed that her injury was undesigned and unexpected, but adhered to its view that the injury did not arise "during and as a result of the performance of [her] regular or assigned duties." N.J.S.A. 43:16A-7(1). The Board premised its analysis on the Court's statement in Kasper that an employee "must be engaged in his or her employment duties on property owned or controlled by the employer in order to qualify for an accidental disability pension." Kasper, 164 N.J. at 581. The Board relied on two unpublished decisions in which our court upheld the denial of accidental disability pensions to public employees who suffered disabling injuries in parking lots. Recognizing those decisions involved employees coming to, or going from work, the Board nonetheless concluded that an employee parking lot "is not considered the employer's premises under Kasper." Therefore, Bowser's injury on the way to the parking lot did not occur "during and as a result of her regular or assigned duty."

This appeal followed.

## II.

We will sustain an administrative agency's quasi-judicial decision, as the Board made here, "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or

that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). The "search for arbitrary or unreasonable agency action" may involve the question "whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law . . . ." Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).

As the facts are undisputed, whether Bowser's injury occurred "during and a result of her regular or assigned duties" is a legal question of statutory interpretation, which we review de novo. See Saccone v. Bd. of Trs. of Police and Firemen's Retirement Sys., 219 N.J. 369, 380 (2014). We may give "substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing," Richardson, 192 N.J. at 196, particularly when its interpretation involves a permissible construction of an ambiguous provision, Kasper, 164 N.J. at 581-82, or the exercise of expertise, In re Alleged Improper Practice, 194 N.J. 314, 332 (2008); A.Z. v. Higher Educ. Student Assistance Auth., 427 N.J. Super. 389, 394 (App. Div. 2012). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

In this case in particular, we owe no deference to the Board's decision, as the Board does not purport to interpret anew the statute governing accidental disability pensions, specifically, the provision requiring that disabling accidents occur "during and as a result of the performance of [an employee's] regular or assigned duties . . . ." N.J.S.A. 43:16A-7(1). Rather, the Board attempts to interpret the Supreme Court's binding precedent in Kasper, and our court's unpublished decisions, which do not bind us. An agency is required to follow judicial precedent interpreting the statute it implements. Twp. of Franklin v. Franklin Twp. PBA Local 154, 424 N.J. Super. 369, 378 (App. Div. 2012).

We owe no deference to an administrative agency's interpretation of judicial precedent. "[A]gencies have no special qualifications of legitimacy in interpreting Court opinions. There is therefore no reason for courts — the supposed experts in analyzing judicial decisions — to defer to agency interpretations of the Court's opinions." Akins v. FEC, 101 F.3d 731, 741 (D.C. Cir. 1996) (en banc), vacated on other grounds, 524 U.S. 11 (1998). See also Miklin Enters., Inc. v. N.L.R.B., 861 F.3d 812, 823 (8th Cir. 2017) (noting that "[n]umerous prior court of appeals decisions have held that the Board's interpretation of judicial precedent 'is not entitled to

judicial deference'") (citation omitted); <u>Maine Pub. Serv. Co. v. Fed. Power Comm.</u>, 579 F.2d 659, 665 (1st Cir. 1978) (stating "a court may pass judgment independently" upon an agency's interpretation of judicial precedent); <u>cf.</u> <u>Mount v. Bd. of Trs., Police and Firemen's Ret. Sys.</u>, ___ N.J. ___, ___ (2018) (slip op. at 21) (stating that Court "reviews de novo the Board's interpretation of N.J.S.A. 43:16A-7(1) and our case law").

In this case, the Board misinterpreted the Court's decision in <u>Kasper</u> to preclude categorically accidents occurring in a public employer's parking lot.[1]  The Court concluded that the current statutory language was "intended to reestablish the integrity of the premises rule and eliminate the judicially created exceptions to the going and coming rule." <u>Kasper</u>, 164 N.J. at 580.  In order for an accident to be eligible, it must have occurred "on premises owned or controlled by the employer, and not during activities encompassed within the myriad of coming and going exceptions that ha[ve] sprung up."  <u>Ibid.</u> Thus, "commuting accidents" in parking lots would not be eligible.  <u>Ibid.</u>  However, an accident occurring "during or as a

---

[1] We acknowledge that unpublished decisions of our court have not taken a uniform approach to accidents in parking lots and other areas outside a building where a public employee generally performs assigned duties.  However, those decisions are not binding.  <u>R.</u> 1:36-3.  We look to <u>Kasper</u> to guide our resolution of this case.

result of the actual performance of [an employee's] duties, or in an activity preparatory but essential to the actual duty" on the employer's premises would be eligible.  See id. at 585.

Amplifying this concept, the Court held, "Common sense dictates that the performance of an employee's actual duties incorporates all activities engaged in by the employee in connection with his or her work, on the employer's premises, from the formal beginning to the formal end of the workday." Id. at 585-86.  In that regard, the Court made an observation of particular relevance to this case: "Included are on-premises lunch and restroom breaks that are necessary concomitants of an employee's performance of his or her regularly assigned tasks, so long as they occur within the confines of the workday at the work location."  Id. at 586 n.7.

Although Kasper did not involve a lunch or bathroom break accident, the Court's statement is controlling.  "Appellate and trial courts consider themselves bound by [the] Court's pronouncements, whether classified as dicta or not."  State v. Dabas, 215 N.J. 114, 136-37 (2013); see also State v. Sorensen, 439 N.J. Super. 471, 488 (App. Div. 2015) (stating that we, as an intermediate appellate court, are "bound by carefully considered dictum from the Supreme Court").  Notably, at oral

argument, the Board abandoned its previous position that the Court's statement was non-binding dictum.

The Court held that Helen Kasper, a media specialist for the Newark Board of Education, was entitled to an accidental disability pension after she was injured outside her school before the official start of the work day. The Court found she had already arrived at her work location when she was injured — notwithstanding that she had only reached her school's front steps. Although she arrived early, she did so with a supervisor's approval, to distribute materials to classrooms for use at the start of the school day. Thus, "she was engaged in conduct that was, in every sense, preliminary but necessary to her early workday media distribution." Id. at 588.

The Court distinguished Kasper's incident from administrative decisions in which pension boards denied accidental disability pensions to employees who suffered injuries while still on the way to work. One involved a teacher who "slipped and fell on ice while walking across [a] school parking lot towards school [who] was 'on his way to work and was not yet in the performance of his duties at the time of the incident.'" Id. at 581-82 (quoting Estate of Matza v. Bd. of Trs., TPAF, 96 N.J.A.R.2d 224 (Div. of Pensions)). Another case involved an employee who was in an automobile collision after

she drove through the front gate of her employer's facility, but "had not yet reached her normal work location, had not signed in, and had not begun her usual work duties." Id. at 581 (citing Lewis-Miles v. Bd. of Trs., PERS, TYP 8932-96, initial decision (July 16, 1998), adopted (Aug. 20, 1998), http://njlaw.rutgers.edu/collections/oal/final/typ8932-96.pdf).

Kasper does not support the Board's blanket position that a parking lot always lies outside a public employer's premises for purposes of determining eligibility for an accidental disability pension. Kasper construed the statute to exclude commuting accidents, including those that occur in the parking lot. Id. at 580. In other words, a parking lot lies outside the work location if it is still part of the journey to or from work. Consistently, we held today in Mattia v. Board of Trustees, Police & Firemen's Retirement System, ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 7-9), that a corrections officer was ineligible for an accidental disability pension when he suffered his disabling injury while traversing a parking lot on his way to check in for work, having not yet begun performing his regular or assigned duties.

Depending on an employee's regular or assigned duties, the work location may well include the employer's parking lot. A public employee injured as a result of a traumatic event while

shoveling an employer's parking lot as part of his or her maintenance job satisfies the requirement to show the injury occurred "during and as a result of the performance of his [or her] regular or assigned duties." N.J.S.A. 43:16A-7(1). Likewise, a physical education teacher, injured as a result of a traumatic event while running into the parking lot to retrieve an errant soccer ball during a gym class would satisfy the statute. The result depends on the employee's use of the parking lot. We do not presume that every post-commute parking lot accident is covered. Nor shall we attempt to formulate a rule for cases not before us.

Here, Bowser suffered a disabling accidental injury during her workday, at the work location. We recognize that Bowser did not leave the jail on her way to the parking lot in order to perform assigned duties. She does not contend she performed security, or inmate supervision in the parking lot. However, she entered the parking and road area within the confines of the MCCC property to retrieve necessary feminine hygiene products from her car because she was, unexpectedly, working a second eight-hour shift.

Just as restroom breaks at the work location during the workday "are necessary concomitants of an employee's performance of his or her regularly assigned tasks," Kasper, 164 N.J. at 586

12                                                                    A-0568-16T4

n.7, so was Bowser's break to retrieve those necessary products. She remained on the MCCC premises, and had no intention of leaving. She obtained relief from a fellow officer so she could briefly leave her post, as she would if she had headed straight to the restroom. And, she was "on the clock," as she would be during a restroom break. Consequently, her accident occurred "during and as a result of the performance of [her] regular or assigned duties." N.J.S.A. 47:16A-7(1). As the Board conceded she satisfied the remaining Richardson factors, the Board erred in denying Bowser an accidental disability pension.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0568-16T4