**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5146-16T2

THOMAS MULCAHEY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

Argued February 4, 2019 – Decided June 3, 2019

Before Judges Messano, Fasciale and Gooden Brown.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury, TPAF No. 1-10-156216.

Richard A. Friedman argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Richard A. Friedman, of counsel and on the briefs; Edward M. Suarez, Jr., on the briefs).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Jeff S. Ignatowitz, Deputy Attorney General, on the brief).

PER CURIAM

Pursuant to N.J.S.A. 18A:66-39(c) (the Act), a member of the Teachers' Pension and Annuity Fund (TPAF) is eligible for accidental disability benefits if he or she "is permanently and totally disabled as a direct result of a traumatic event occurring <u>during and as a result of the performance of his regular or assigned duties</u> . . . ." (emphasis added);[1] <u>see</u> <u>Kasper v. Bd. of Trs., Teachers' Pension & Annuity Fund</u>, 164 N.J. 564, 575-76 (2000) (discussing elements of a successful claim for accidental disability benefits and 1966 statutory amendments enacted to "make the granting of an accidental disability pension more difficult"). In 1986, the Legislature amended the Act, adding the following:

> A traumatic event <u>occurring during voluntary performance of regular or assigned duties</u> at a place of employment <u>before or after required hours of employment</u> which is not in violation of any valid work rule of the employer or otherwise prohibited by the employer <u>shall be deemed as occurring during the performance of regular or assigned duties</u>.
>
> [<u>L.</u> 1986, <u>c.</u> 51 (1986 Amendment) (emphases added).]

---

[1] After May 21, 2010, no new member of the TPAF is eligible for accidental disability benefits. <u>L.</u> 2010, <u>c.</u> 3, § 7.

A-5146-16T2

"The purpose of the 1986 amendment . . . was not to alter the statutory requirements for an accidental disability pension, but to make the legal ramifications of the performance of an employee's duties either before or after hours the same as if it occurred during the regular school day." Kasper, 164 N.J. at 585 n.5 (citation omitted).

This appeal presents primarily a legal question. Is a high school teacher, paid a stipend under a separate contract to coach one of the school's athletic teams, who becomes "permanently and totally disabled as a direct result of a traumatic event" during after-school practice, eligible for accidental disability benefits because the "traumatic event occurr[ed] during and as a result of . . . his regular or assigned duties . . . [?]" N.J.S.A. 18A:66-39(c). The facts are essentially undisputed.

Thomas Mulcahey first became an athletic coach in the Freehold Regional High School District in the fall of 1991. Two years later, the District hired him as a high school physical education teacher. He continued his duties thereafter as a coach, and, during the 2006-07 school year, the District hired Mulcahey as the head coach for the girls' varsity softball team. Each year, the District would evaluate a coach's performance, the evaluations were forwarded through the chain of command to the District superintendent, and before hiring coaches, the

District reviewed applications whether submitted by those who had previously coached or new applicants.

The District paid coaches a stipend, which was not included as pensionable salary, and the District therefore did not deduct pension contributions from the stipend. In this case, the collective negotiations agreement between the Board of Education and the teachers' bargaining unit established the amount of the stipend paid to Mulcahey. The District's coaching manual contained a broad "Philosophy Statement," which specified that the "fundamental purpose of interscholastic athletics" was, among other things, to "foster the intellectual growth of the student by supporting and reinforcing the academic program of the school." It further stated, "[f]unctioning as a part of the educational whole[,] the athletic program should always be in conformity with the District's objectives."

A contractual responsibility of the softball coach was to supervise after-school practices. During practice on April 11, 2007 (2007 incident), Mulcahey was struck in the face by an "errant throw," causing a concussion and fracturing the zygomatic arch of his face in three places. He also suffered herniated discs, cognitive and vision problems, depression, and anxiety. As a result, Mulcahey

A-5146-16T2

took leave until January 2008. Upon his return, he claimed he was unable to cope with the stresses of the job.

On March 30, 2009 (2009 incident), Mulcahey suffered a concussion when, during a physical education class, a "spiked" volleyball hit his head. Mulcahey did not return to work until October. In April 2011, he submitted an application for accidental disability benefits, claiming he was permanently disabled as a result of both incidents. He continued to coach and teach until 2014, when he left because of his asserted disability.

The TPAF Board of Trustees (Board) initially denied Mulcahey's request for accidental disability benefits, concluding he was not "totally and permanently disabled." In 2014, based on supplemental medical evidence, the Board partially reversed its earlier decision. It concluded Mulcahey was "totally and permanently disabled[,]" but it denied him accidental disability benefits.

The Board reasoned that although the 2009 incident "occurred during and as a result of the performance of [Mulcahey's] regular or assigned duties[,] there [was] no evidence . . . of direct causation of a total and permanent disability based on the [2009] incident . . . ." As to the 2007 incident, "which was the substantial contributing cause of [Mulcahey's] disability," the Board concluded it "did not occur during and as a result of his regular and assigned duties[,]"

because "coaching . . . [was] not part of [Mulcahey's] regular and assigned job duties."[2]  Mulcahey appealed again.[3]

Both parties moved for summary decision, acknowledging that the issue presented a legal question, which the ALJ framed succinctly:

> It is [Mulcahey's] position that in respect to the Board's determination that [the] 2007 injury, sustained during the performance of his coaching duties while on the school's athletic field, does not qualify as having occurred during the performance of his regular or assigned duties, Kasper has already determined that the Board's position is unsustainable.  The Board attempts to argue otherwise.

Relying heavily on the Court's dicta in Kasper, the ALJ rendered a comprehensive initial decision finding Mulcahey was eligible for accidental disability benefits.  The Board rejected the ALJ's decision, finding it was "not consistent with Kasper[, but] rather . . . [was] an unwarranted expansion of

---

[2]  The Board misstated the statutory qualification as relating to "regular and assigned duties," whereas N.J.S.A. 18A:66-39(c) refers to "regular or assigned duties."

[3]  The parties agreed before the administrative law judge (ALJ) to first litigate whether Mulcahey was eligible for accidental disability benefits occasioned by the 2007 incident, and hold in abeyance the 2009 incident, litigating that only if Mulcahey was unsuccessful.

Kasper." It remanded the matter to the ALJ to develop a "full and complete administrative record" before the Board conducted its review.

The remand hearing included the testimony of Mulcahey, the District Athletic Director, Mulcahey's treating doctor, and his medical expert.[4] The ALJ rendered another initial decision, in which he found Mulcahey totally and permanently disabled by the 2007 incident, which "occurred during and as a result of [Mulcahey's] performance of his regular or assigned duties."

The ALJ again relied upon Kasper, in particular, the Court's example of

> the soccer coach who arrives early to bring the equipment out to the field, or who is left on the steps of the school at night after she has shepherded her last player to a waiting car, and is disabled by a traumatic injury is performing her duties, or acts essential to her duties, at the work location and thus qualifies for an accidental disability pension.
>
> [164 N.J. at 587.]

The ALJ further found that if Mulcahey were denied eligibility based upon the "performance" criteria, he was not be eligible to receive accidental disability retirement benefits because the 2009 incident "was not the essential . . . contributing cause of [Mulcahey's] disability."

---

[4] The appellate record contains the ALJ's reconstruction of the hearing due to a failure of the recording system.

A-5146-16T2

In its final decision, which we now review, the Board accepted the ALJ's findings and conclusions regarding the 2009 incident. However, it rejected the ALJ's legal conclusion that the 2007 incident occurred during Mulcahey's regular or assigned duties. It noted that the TPAF's governing statutes, N.J.S.A. 18A:66-1 to -93, "distinguish[ed] between a member's 'contractual salary, for services as a teacher' . . . and 'additional remuneration for performing temporary or extracurricular duties beyond the regular school day' . . . ." (quoting N.J.S.A. 18A:66-2(d)(1)). The Board observed that the TPAF is funded, in part, through teachers' contributions based on a percentage of their contractual salaries, exclusive of whatever "additional remuneration" they may be paid. It concluded the Legislature intended to provide for higher accidental disability awards, as opposed to ordinary disability benefits, only if the member was totally and permanently "disabled 'during and as a result of the performance of his regular or assigned duties' as [a] teacher[]." (quoting N.J.S.A. 18A:66-39(c)); see Kasper, 164 N.J. at 573-74 (recognizing different benefit levels).

Lastly, the Board rejected the ALJ's interpretation of and reliance upon Kasper, concluding that case was factually distinguishable.

> Mulcahey was working under a coaching agreement separate from his employment agreement, received a stipend separate from his regular salary, was evaluated under a separate process, and made no pension

8

contributions on his coaching earnings. . . . Each of these facts militates against any conclusion that he was engaged in his "regular or assigned duties" as a teacher when he coached the girls' softball team. Since the [Kasper] Court did not and could not consider these facts, its soccer-coach example cannot control in this case.

This appeal followed.

Mulcahey essentially contends that Kasper is dispositive of his claim for accidental disability benefits, and the Board's attempts to distinguish it because coaching is an "extracurricular" activity, or because the District paid him a non-pensionable contractual stipend, lack merit. He also argues, in the alternative, that the 2009 incident was a "substantial contributing cause" of his total and permanent disability, and, the Board erred in adopting the ALJ's findings and conclusions in this regard.

We have considered these arguments in light of the record and applicable legal standards. We reverse.

Our review from a final decision of an administrative agency is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). The agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at

27-28).  We accord deference to the "agency's interpretation of a statute" it is charged with enforcing.  Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017), aff'd o.b., 233 N.J. 232 (2018).  "'Such deference has been specifically extended to state agencies that administer pension statutes,' because 'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'"  Id. at 483-84 (quoting Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)).

However, "whether [Mulcahey's] injury occurred 'during and [as] a result of [his] regular or assigned duties' is a legal question of statutory interpretation, which we review de novo."  Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018) (citing Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)).  Moreover, "[w]e owe no deference to an administrative agency's interpretation of judicial precedent."  Id. at 171.  In Bowser, as in this case, we rejected the pension board's "misinterpret[ation of] the Court's decision in Kasper . . . ."  Id. at 172.

In Kasper, a teacher, who routinely arrived before the official start of the school day to distribute materials requested by other teachers, was robbed and assaulted on the steps of the school.  164 N.J. at 571.  The Court concluded that

administrative decisions and case law interpreting "during and as a result of the performance of [the employee's] regular or assigned duties," N.J.S.A. 18A:66-39(c),

> share the recurring theme that, assuming all other statutory prerequisites are met, a worker will qualify for an accidental disability pension if he or she is injured on premises owned or controlled by the employer, during or as a result of the actual performance of his or her duties, or in an activity preparatory but essential to the actual duty. That is true whether the injury occurs during the workday or before or after hours.
>
> [Id. at 585.]

The Court said that under the Act,

> pre- and post-workday performance of an employee's regular or assigned duties essentially constitutes a parallel universe to the performance of those duties during the regular workday. Thus, a teacher who is required to come early or stay late for parent conferences or sports practices clearly qualifies for an accidental disability pension if she receives a disabling traumatic injury while performing those duties.
>
> [Id. at 586.]

The Court contrasted those teachers who arrive early or stay late for reasons unrelated to their employment and are therefore excluded from the Act's benefits, with the hypothetical soccer coach, which we quoted above, who was eligible. Id. at 587. In short, a teacher qualifies for accidental disability benefits

if he "is on premises controlled by the employer and [his] injury is causally connected, as a matter of common sense, to the work the employer has commissioned." Id. at 588.

The Board distinguishes Kasper, contending that because Mulcahey was paid a separate stipend to coach, his injury did not occur "'during and as a result' of his 'regular or assigned duties.'" The Board notes that while the 1986 amendment extended eligibility for injuries occurring before and after regular work hours, it was limited to only the "voluntary performance of regular or assigned duties," not situations, like this, where a teacher was paid a separate stipend for performing those duties. We reject the distinctions as meaningful for purposes of construing the Act under the particular facts of this case.

There is no question that Mulcahey's traumatic injury was "causally connected, as a matter of common sense, to the work the employer ha[d] commissioned." Ibid. Pursuant to his contract, the District hired Mulcahey to coach the girls' varsity softball team and expected him to supervise after-school softball practice, which is what he was doing when injured. The Kasper Court did not address the exact facts presented here, nor did it exclude teachers who are paid by separate contract for supervising extra-curricular activities from

12

eligibility. Neither the Court's "soccer coach" example, nor its interpretation of the 1986 Amendment, carved out such an exception.

Moreover, there are several practical reasons why eligibility for accidental disability benefits should exist under these circumstances. Common experience recognizes that at the high school level, athletic coaches are routinely teachers in the same school or another school in the same district. That relationship permits the coach to interact with other educators, guidance counselors, and the like, to better serve the student and further, in this case, the District's goal that its athletic programs be "part of the educational whole" and "in conformity with the District's objectives."

Further, in this particular case, the stipend the District paid was an item negotiated and incorporated in the parties' collective negotiations agreement. We might assume that if teachers, who were part of a bargaining unit that negotiated an additional stipend for its members, became ineligible for accidental disability benefits by accepting that stipend, they may decline the opportunity to apply for coaching positions.

Lastly, under the Board's interpretation of the Act, if two teachers, one paid a stipend and the other a volunteer, are supervising after-school practice and both are injured as result by a common traumatic event, only the volunteer

13

would be eligible for accidental disability benefits.  The distinction urged by the Board compels an absurd result under those circumstances.  <u>See, e.g.</u>, <u>Kocanowski v. Township of Bridgewater</u>, 237 N.J. 3, 10 (2019) (quoting <u>State v. Twiggs</u>, 233 N.J. 513, 533 (2018)) (cautioning against literal reading of statutory language if it "yield[s] an absurd result . . . at odds with the overall statutory scheme").

We conclude Mulcahey was eligible for accidental disability benefits because of the 2007 incident.  As a result, we need not consider his other argument.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5146-16T2