**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1087-19

MICHAEL REILLY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

> Argued April 28, 2021 - Decided May 24, 2021
>
> Before Judges Accurso and Enright.
>
> On appeal from the Board of Trustees, Police and Firemen's Retirement System, Department of the Treasury, PRFS No. 3-80763.
>
> Marci Hill Jordan argued the cause for appellant (Stark & Stark, attorneys; Marci Hill Jordan, on the brief).
>
> Thomas R. Hower, Staff Attorney, argued the cause for respondent (Robert Seymour Garrison, Jr., Director of Legal Affairs, PFRSNJ, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Michael Reilly appeals from a final decision of the Board of Trustees of the Police and Firemen's Retirement System, denying his application for accidental disability retirement benefits. The Board determined Reilly did not establish his disabling condition was a direct result of a traumatic event. See N.J.S.A. 43:16A-7(1). Because we find this case indistinguishable from Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189 (2007), we reverse.

The essential facts are undisputed. Reilly had been a Merchantville police officer for twenty-two years at the time of his injury in May 2017. Although entrusted with supervisory responsibilities when he was promoted to sergeant in 2006, Reilly also continued to perform the duties of a patrol officer. He was acting in the latter capacity when he responded to a call from a local group home for patients suffering from traumatic brain injuries.

Reilly estimated he'd been called to the home on at least thirty other occasions, including earlier in the day he suffered the accident. The calls were usually the result of a resident being uncooperative or needing medical services or an ambulance. Both calls that day involved the same resident. Reilly described him as a large man, weighing between 240 to 250 pounds, and strong,

A-1087-19

although confined to a wheelchair, or so Reilly believed. The first call involved a report of the resident refusing to return to his room, but by the time they arrived the resident was there, sitting in his wheelchair, calmly watching television. When Reilly and another officer were dispatched to the group home the second time, it was to assist staff and emergency medical services load the same resident into an ambulance for transport to a crisis center.

When Reilly arrived, the resident was in his wheelchair in the small foyer facing the elevator. Three EMS workers were already on site. Reilly described the resident as initially calm and cooperative. When the resident realized, however, that EMS would be taking him to the crisis center, he stood suddenly, screamed "No!" and strode to the elevator in an effort to get away. The other officer and a staff member got in between the resident and the elevator as the resident tried to pry open the elevator door. Reilly got behind the resident and put him in a "full-Nelson" to pull him away from the elevator.

As the resident's hands came away from the elevator door, he drove Reilly back, slamming him "into the wall at the corner of a door jamb." Reilly claimed he immediately felt pain in his back and slumped to the floor. He could not assist the others in getting the resident strapped onto the stretcher. Reilly spent

A-1087-19

the next two days in the trauma unit at Cooper Hospital. He never returned to work.

Reilly applied for accidental disability retirement benefits. The Board determined he was totally and permanently disabled as a direct result of the incident in which he injured his back and physically incapacitated from the performance of his usual duties. The Board also determined the incident was identifiable as to time and place; was caused by an external circumstance and not the result of a pre-existing disease; occurred during and as a result of Reilly's regular duties; and was not the result of willful negligence.

Notwithstanding those findings, the Board denied Reilly's application for accidental disability retirement benefits, concluding "the basis for [his] disability claim [did] not qualify as a traumatic event" because "there was no actual accident or external happening," thereby preventing a "finding on the issue of undesigned and unexpected, as required by case law." The Board instead awarded him ordinary disability retirement benefits. Reilly appealed, and the matter was transferred to the Office of Administrative Law (OAL) for a hearing as a contested case.

The administrative law judge appropriately determined the only issue before her was whether Reilly's encounter with the resident qualified as a

4

"traumatic event" under N.J.S.A. 43:16A-7(1) and Richardson. Although finding based on the undisputed testimony of Reilly and his fellow officer, the only two witnesses to testify, that the resident Reilly and his partner were trying to subdue "became physical and pushed [Reilly] back against a wall," causing him "to sustain[] a disabling injury to his back," the ALJ concluded the case was closer to Cattani v. Board of Trustees, Police & Firemen's Retirement System, 69 N.J. 578 (1976), than to Richardson.

Specifically, the ALJ found a police officer getting into a physical confrontation with an uncooperative disabled adult "is not extraordinary or an unusual occurrence." Reasoning from Cattani, where the "fireman's strenuous work effort in dragging heavy hoses" without adequate assistance "was not an accident," because "[d]ragging heavy hoses was part of his job," the ALJ found "[g]etting pushed down when trying to subdue a handicapped adult whom you are trying to get into a stretcher to transport to crisis" was part of Reilly's job. Because the ALJ found "[t]his incident and injury could have occurred to any officer in the line of duty trying to subdue a resident at a group home," she concluded the incident was not "'traumatic' as intended in Richardson, Cattani, or N.J.S.A. 43:16A-7."

A-1087-19

Reilly filed exceptions, but the Board adopted the ALJ's initial decision affirming the Board's denial of Reilly's application for accidental disability retirement benefits. Reilly appeals, arguing the Board's decision is contrary to the holding in Richardson, and that the ALJ, and consequently the Board, erred in applying that controlling precedent to the facts. We agree.

Our public pension systems are "bound up in the public interest and provide public employees significant rights which are deserving of conscientious protection." Zigmont v. Bd. of Trs., Teachers' Pension & Annuity Fund, 91 N.J. 580, 583 (1983). Because pension statutes are remedial in character, they are liberally construed and administered in favor of the persons intended to be benefited thereby. Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cnty., 199 N.J. 14, 34 (2009).

Our role in reviewing a decision of the Board of Trustees in such matters, however, is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility, City of Newark v. Nat. Res. Council, Dep't of Env'tl Prot., 82 N.J. 530, 539 (1980), and defer to its fact finding, Utley v. Bd. of Rev., 194 N.J. 534, 551 (2008). We will not upset the determination of an administrative agency absent a showing that it was arbitrary,

6

capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies.  In re Musick, 143 N.J. 206, 216 (1996) (citing Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)).

Because the facts are undisputed here, however, the question presented is simply a legal one, which we review de novo.  See Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014).  Moreover, "[w]e owe no deference to an administrative agency's interpretation of judicial precedent," Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 171 (App. Div. 2018), here, specifically Richardson and Cattani.

In Richardson, the Supreme Court determined that an individual seeking accidental disability benefits under N.J.S.A. 43:16A-7(1) must establish:

1.    that he is permanently and totally disabled;

2.    as a direct result of a traumatic event that is

    a.    identifiable as to time and place,

    b.    undesigned and unexpected, and

    c.    caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3.    that the traumatic event occurred during and as a result of the member's regular or assigned duties;

A-1087-19

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson, 192 N.J. at 212-13.]

Both Cattani and Richardson turned, as this case does, on the sole question of whether the disabled plaintiff had suffered a traumatic event in the course of his work. Although both plaintiffs in those cases were injured in the course of their regular duties, the Court determined Cattani's disability was not the result of a traumatic event, but Richardson's disability was.

Cattani was a Trenton firefighter who suffered basilar artery occlusion, secondary to atherosclerosis, after an unusually strenuous fire call, resulting in intermittent paralysis in his arms and legs. Cattani, 69 N.J. at 581. The Court held because Cattani's disability did "not stem from an injury or wound produced by external force or violence," he could "not satisf[y] the requirement of a traumatic event and his application for an accidental disability pension under N.J.S.A. 43:16A-7 was properly denied." Id. at 586. In explaining its holding, the Court declared that "work effort alone whether unusual or excessive, cannot be considered a traumatic event, even though it may have aggravated or accelerated" Cattani's preexisting cardiovascular condition. Ibid.

8

Richardson's case was different. He was a corrections officer who suffered a career-ending injury in a scuffle with an inmate violently resisting being handcuffed. Richardson, 192 N.J. at 193. Richardson and other officers had taken the inmate to the ground with Richardson straddling him to hold him there until he could be cuffed. Ibid. As Richardson reached for his handcuffs, the inmate "forcefully jerked up from the ground, knocking Richardson backward," causing him "to fall back onto his left hand and hyper-extend his wrist." Ibid. Although both Cattani and Richardson were injured during the regular performance of their duties, Richardson's injury satisfied the accidental disability statute because "[w]hile performing the regular tasks of his job as a corrections officer, subduing an inmate, Richardson was thrown to the floor and hyperextended his wrist." Id. at 214.

As Justice Long explained, "a police officer who has a heart attack while chasing a suspect has not experienced a traumatic event." Richardson, 192 N.J. at 213. That would make the case like Cattani, because "the work effort, alone or in combination with pre-existing disease, was the cause of the injury." Ibid. That "same police officer," however "permanently and totally disabled during the chase because of a fall, has suffered a traumatic event." Ibid. What Cattani teaches, as Justice Long explained in Richardson, is that "where the disability

9

arises out of a combination of pre-existing disease and work effort, a traumatic event has not occurred." Id. at 211. Instead, "what is required is a force or cause external to the worker (not pre-existing disease) that directly results in injury." Ibid.

Accordingly, had Reilly simply injured his back in the course of putting the resident into "a full-Nelson," he would not have suffered a traumatic event, because the injury would have been caused solely by the work effort of subduing the resident so he could be transported to a crisis center. What distinguishes the case from Cattani is the ALJ's finding that Reilly's injury was caused by the resident pushing Reilly "back against a wall." Reilly wasn't injured "by work effort alone," Cattani, 69 N.J. at 586, as Cattani was dragging fire hoses; he was injured because his back made contact with the wall when the resident drove him backward from the elevator. That makes this case indistinguishable from Richardson, who in the course of trying to subdue an inmate was knocked backward, causing him "to fall back onto his left hand and hyper-extend his wrist." Richardson, 192 N.J. at 193. The resident knocking Reilly backward, was the force or external cause that caused him to slam his back into the wall, directly resulting in his injury.

We accordingly reverse and remand this matter to the Board for disposition in accordance with this opinion. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1087-19