**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1487-22

IN THE MATTER OF DAVID
PETERSON, STOCKTON
UNIVERSITY.

_____

Argued February 13, 2024 – Decided March 5, 2024

Before Judges Whipple, Enright and Paganelli.

On appeal from the New Jersey Civil Service Commission, Docket No. 2023-717.

Rimma Razhba, Deputy Attorney General, argued the cause for appellant Stockton University (Matthew J. Platkin, Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Rimma Razhba and Ian Michael Fiedler, Deputy Attorney General, on the briefs).

Louis Michael Barbone argued the cause for respondent David Peterson (Jacobs & Barbone, P.A., attorneys; Louis Michael Barbone, on the brief).

Timothy Patrick Malone argued the cause for respondent Civil Service Commission (Pashman Stein Walder Hayden, attorneys; Timothy Patrick Malone, on the brief).

PER CURIAM

In this civil service matter, Stockton University (SU) appeals from the December 7, 2022 final agency decision of respondent Civil Service Commission (CSC). The December 7 decision denied SU's motion to reconsider the CSC's August 3, 2022 decision to suspend—rather than terminate—respondent David Peterson from his job at SU. We affirm.

I.

In 2003, SU hired Peterson as a temporary repairer. He was elevated to the position of senior repairer in 2007, and served in SU's Plant and Housing Maintenance Department until 2020. Peterson had no disciplinary history with SU until the 2020 incident giving rise to this appeal.

In June 2020, when much of SU's campus was empty due to the COVID-19 pandemic, Peterson and other repairers were instructed to clean out items remaining in student housing units and place those items in storage units. On June 12, 2020, while performing this task, Peterson removed a bicycle from the Unit 1, D building area of campus and placed it in an SU van before transferring it to his own vehicle. Peterson then took the bike home, refurbished it, and purportedly gave it to a young girl who needed a bicycle.

Peterson noticed the bike approximately two weeks before he removed it from SU's campus. He saw it had two flat tires and was somewhat rusty.

2

Additionally, he noted it was neither locked nor secured, but leaning against a handrail. Given its condition, Peterson believed the bike was abandoned as trash, much like other bikes left abandoned on campus that were routinely piled up behind SU's Public Safety Building for disposal in the future.

Peterson knew SU's policy was that personal items left behind in housing and residential areas of the campus were considered trash. But he also was aware such items could not be taken by employees for personal use or gain without consent from the Director of Plant Management. Admittedly, he received no such consent before taking the bike.

Five days after Peterson removed the bike from campus, an SU student reported the same bicycle as missing. Officer James Heitzer from the Stockton Police Department (SPD) commenced an investigation into the incident. Following his review of campus surveillance footage from June 12, he determined Peterson took the bicycle. In response to a communication from the SPD, Peterson left a voicemail with the department, explaining he thought the bike was abandoned. He also stated he wanted to apologize to the owner and would pay restitution for the bike, adding this incident "was killing him inside." Peterson then contacted Katherine Hibbert, SU's Associate Director of Plant

3

Operations, told her he made a mistake by taking the bike, and explained he could not get it back.

On June 24, 2020, Peterson and Officer Heitzer spoke by phone. Peterson again stated he took the bike thinking it was abandoned, and he gave it to a young girl in need. Further, Peterson reiterated he wanted to pay restitution to the bike's owner and hoped to apologize to her.

On June 30, 2020, the SPD issued a criminal complaint against Peterson, charging him with theft, N.J.S.A. 2C:20-3(a). That charge was subsequently dismissed and expunged.

On July 6, 2020, SU served Peterson with a Preliminary Notice of Disciplinary Action, charging him with: (1) "Major Discipline," N.J.A.C. 4A:2-2.2(a); (2) "Conduct Unbecoming a Public Employee," N.J.A.C. 4A:2-2.3(a)(6); and (3) "Other Sufficient Cause," N.J.A.C. 4A:2-2.3(a)(12). Following a disciplinary hearing, SU issued a Final Notice of Disciplinary Action on March 18, 2021, sustaining all charges against Peterson and removing him from employment as of July 9, 2020. Peterson appealed from this determination and the matter was referred to the Office of Administrative Law (OAL).

On April 6, 2022, an Administrative Law Judge (ALJ) conducted an initial hearing. SU called Heitzer and Hibbert to testify. SU also produced the

following witnesses: Robert Haviland, former Associate Director of Facilities Management and Plant Operations; John Fritsch, Assistant Vice President of Facilities and Operations; and Elen Manalang, Associate Director of Human Resources at SU. SU's witnesses testified about SU's policies and rules regarding campus property and removal of items from campus.

Peterson also testified at the hearing. He admitted to taking the bike, placing it in an SU work van, and removing it from campus. However, he denied selling the bike, despite having a side job salvaging scrap metal. Peterson testified he refurbished the bike before giving it away to a young girl who needed a bike. Although Peterson admitted he did not follow SU's procedure for disposing of the bike, he explained he thought the bike was abandoned as trash so he "saw no need to tell" a supervisor before removing it. He also testified that while employed at SU, he had returned numerous other items he found on campus that he thought were lost or abandoned, including a wallet, a ring, and a pocketbook. Peterson stated he turned over these items either to the police or the person in charge of campus housing.

On June 24, the ALJ issued her initial decision. After outlining the testimony of each witness, the ALJ found SU's witnesses were credible. Turning to Peterson's testimony, she stated "Peterson candidly admitted he took the

bicycle," claiming "he believed the bike to be abandoned," an assertion that "m[ight] well be truthful given the apparent appearance of the bike, how he found it not in the bike rack, and that the campus was virtually devoid of anyone but a few workers." She also accepted Peterson's testimony that "[h]e made restitution to the bicycle owner." However, the ALJ found "[h]is belief that he thought he was doing something good . . . [for] a young girl in financial need[] was not delivered in a confident nor believable manner." The ALJ noted that Peterson "admittedly is a scrapper and takes trash or discarded items and sells them," and because "[h]e was unable to get the bike back," this was "a situation which len[t] itself more to him having sold the bike or scrapped it for cash."

Additionally, the ALJ referred to Peterson's testimony that he knew "abandoned property is considered trash and that [SU's] policy does not allow for taking home any items [an employee] did not bring to work with [them]." Therefore, she found "[h]e was aware . . . such items could not be taken for personal use or gain without advance . . . written consent of the Director of Plant Management" and "[h]e did not have such written consent to take the bicycle."

Based on these factual and credibility findings, the ALJ concluded Peterson's conduct constituted "conduct unbecoming a public employee" and

"other sufficient cause."  However, she found the Major Discipline charge was not a substantive disciplinary charge and should be dismissed.

Turning to the issue of the penalty to be imposed, the ALJ stated "Peterson's prior disciplinary history must be considered" in her "progressive discipline analysis."  She found Peterson "ha[d] no prior disciplinary history," which was "a substantial mitigating factor."  Further, the ALJ determined "there [was no] . . . finding of guilt of a criminal charge of 'theft'" against Peterson, but rather "a finding of a violation of [SU's] policy from its Code of Conduct." However, because Peterson "knew he was not authorized to take the bicycle, even if it was for a purpose he believed to be a good thing," the ALJ found the applicable "mitigating factors [we]re not enough to overcome the egregiousness of his action in taking the bicycle, knowing that any such property left behind bec[ame] property of [SU] and is deemed trash, to be disposed of properly."  The ALJ further concluded "removal sh[ould] be the . . . discipline" imposed, because "Peterson's conduct was egregious."

On August 3, 2022, the CSC adopted the ALJ's findings to sustain the charges of "conduct unbecoming a public employee" and "other sufficient cause."  The CSC also concluded Peterson's "misconduct was clearly inappropriate and serious, and absent any mitigating factors, worthy of removal

from employment." But the CSC found removal was not appropriate, "considering that [Peterson's] conduct was apparently out of character for [him,] based on his lack of any previous discipline over his long career."

After finding Peterson's misconduct "was not so egregious to warrant removal from employment," the CSC determined "a six-month suspension, the most serious suspension that can be imposed, [wa]s appropriate." The CSC found "[t]his penalty should impress upon [Peterson] the seriousness of his misconduct and serve as a warning that any future misconduct may result in his removal from employment." Finally, it ordered that Peterson "be granted back pay, benefits, and seniority from six months after the first date of separation to the actual date of reinstatement."

SU moved for reconsideration of the August 3 penalty decision; alternatively, it sought a stay pending appeal. On December 7, 2022, the CSC denied SU's motion. In denying reconsideration, the CSC cited N.J.A.C. 4A:2-1.6(b)[1] and found SU "ha[d] not met the standard for reconsideration." Further, the CSC rejected SU's argument that the agency "erred . . . in concluding that

---

[1] This regulation provides that when seeking reconsideration, the petitioner must show: "(1) . . . new evidence or additional information not presented at the original proceeding, which would change the outcome and the reasons that such evidence was not presented at the original proceeding; or (2) [t]hat a clear material error has occurred."

Peterson's conduct was 'apparently out of character based on his lack of any previous discipline over his long career' as there was no testimony regarding [his] character."  The CSC explained that it:

> modified Peterson's removal to a six-month's suspension based on the particular facts . . . and [Peterson's] lack of disciplinary history . . . with [SU]. In other words, the [CSC] found that [Peterson's] lack of disciplinary history was evidence of his character[,] and testimony regarding [his] character was not needed to make this determination.  Further, the [CSC] did not need to find that the ALJ's credibility determinations were "arbitrary, capricious[,] or unreasonable" to come to this conclusion[,] as the [CSC] did not make this decision based on a credibility determination. Moreover, . . . the ALJ only ma[de] a recommendation concerning the penalty and the [CSC], based on the [ALJ's] [f]indings of [f]acts[,] . . . ultimately concluded . . . a six-month suspension was appropriate under the concept of progressive discipline after finding the conduct was not so egregious under the circumstances . . . [as] to warrant removal.

> Concerning [SU]'s assertion that the [CSC]'s decision goes against its own "precedent," it is noted that while the [CSC] is guided by its prior decisions, . . . each case has its own unique facts and [is] decided on that basis.  Further, contrary to [SU]'s statement that the [CSC] failed to consider its concerns if Peterson was reinstated, the [CSC] found "this penalty should impress upon [Peterson] the seriousness of his misconduct and serve as a warning that any future misconduct may result in his removal from employment."  In other words, while the [CSC] acknowledged [SU]'s concerns by indicating that Peterson's conduct was "serious," it found that given

9

the particular facts[,] . . . Peterson's lack of disciplinary history, and the potential for future removal, he was unlikely to be a repeat offender.

Next, the CSC rejected SU's request for a stay, finding the university was "unlikely to prevail on the merits" of any appeal it filed. The agency also concluded a stay was unwarranted because there was no "danger of immediate or irreparable harm if Peterson [wa]s reinstated as it found . . . Peterson [wa]s unlikely to be a repeat offender" and moreover, it was Peterson who suffered harm, having "served more than a six-month suspension without reinstatement."

On appeal, SU raises the following arguments: (1) the CSC's decision to modify Peterson's removal to a 180-day suspension was arbitrary, capricious, and unreasonable, and unsupported by the substantial, credible evidence in the record; (2) the CSC mistakenly reduced the removal penalty to a 180-day suspension despite the sustained charge of theft of student property; and (3) the CSC's finding on Peterson's character is not supported by the record.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). An agency's final decision will be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Herrmann, 192 N.J. at 27-28. "The

burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the [party] challenging the administrative action."  In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

Our role in reviewing an administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

We do not substitute our judgment for that of the agency's when "substantial credible evidence supports [the] agency's conclusion."  Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992).  Instead, we "defer to an agency's expertise and superior knowledge of a particular field."  Ibid. "Deference controls even if [we] would have reached a different result in the first instance."  Herrmann, 192 N.J. at 28.

11

"While we must defer to the agency's expertise, we need not surrender to it." N.J. Chapter of Nat'l Ass'n of Indus. & Office Parks v. N.J. Dep't of Env't Prot., 241 N.J. Super. 145, 165 (App. Div. 1990). Thus, we are not bound to accept an agency's interpretation of a statute or a regulation, and we review strictly legal questions de novo. Bowser v. Bd. of Trs., Police & Fireman's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

Pertinent to this appeal, we review an agency's disciplinary sanction under a deferential standard and only modify a sanction "when necessary to bring the agency's action into conformity with its delegated authority." Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)). When reviewing an agency's disciplinary action, we consider "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29 (quoting Polk, 90 N.J. at 578).

The CSC has long utilized the concept of progressive discipline when considering the proper sanction. Progressive discipline is based on the notion that "past misconduct can be a factor in the determination of the appropriate penalty for present misconduct." Id. at 29.

The CSC applies progressive discipline in two different ways: to "support the imposition of a more severe penalty for a public employee who engages in

habitual misconduct," id. at 30, or to reduce the penalty for "an employee who has a substantial record of employment that is largely or totally unblemished by significant disciplinary infractions," id. at 33. But the CSC is not required to consider progressive discipline when employee misconduct is "so serious that removal is appropriate notwithstanding a largely unblemished prior record." In re Carter, 191 N.J. 474, 484 (2007).

Here, the CSC's decision to downgrade Peterson's penalty cannot fairly be characterized as "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." See Herrmann, 192 N.J. at 28-29. While recognizing Peterson's "misconduct was inappropriate" and "serious," the CSC found Peterson had an unblemished disciplinary record from the time he was hired in 2003 until the bicycle incident in 2020, and that his "lack of disciplinary history was evidence of his character." The CSC further concluded it did not need testimony about Peterson's character "to make this determination," because its decision was not "based on a credibility determination." Additionally, the CSC determined Peterson's "conduct was not so egregious under the circumstances in this matter to warrant removal."

These findings and conclusions are amply supported by the record. Therefore, the CSC acted well within its authority in disagreeing with the ALJ's

recommendation that Peterson should be terminated for his misconduct. Indeed, the CSC was not bound by the ALJ's penalty recommendation because the penalty decision remained subject to the CSC's de novo review. See Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 81 (2012).

In sum, based on our deferential standard of review of an agency's disciplinary sanction, and for the reasons set forth by the CSC in its December 7 decision, we conclude the CSC did not abuse its discretion in reducing Peterson's penalty from termination to a 180-day suspension.

To the extent we have not addressed SU's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1487-22