NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3848-23

H.F.,[1]

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **January 7, 2026** |
| **APPELLATE DIVISION** |

Argued December 16, 2025 – Decided January 7, 2026

Before Judges Firko, Perez Friscia, and Vinci.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx4687.

Steven J. Kossup argued the cause for appellant.

Dylan Thomas Stracke argued the cause for respondent (Blumberg & Wolk, LLC, attorneys; Christopher M. Wolk and Conor M. Brady, on the brief).

The opinion of the court was delivered by

PEREZ FRISCIA, J.A.D.

---

[1] We use initials to preserve the confidentiality of these proceedings, which included medical evaluations and diagnoses. R. 1:38-3(a)(2).

Petitioner H.F. appeals from the Board of Trustees (Board) of the Police and Firemen's Retirement System's July 8, 2024 final agency decision denying his accidental disability retirement (ADR) benefits application pursuant to N.J.S.A. 43:16A-7(a)(1). H.F. contends the Board erroneously denied his application for ADR benefits, which he filed after a traumatic event caused an exacerbation of his preexisting mental health disorder.

The question presented on appeal is whether the Board correctly interpreted Richardson v. Board of Trustees, Police & Firemen's Retirement System factor 2(c)—which provides that a traumatic event must be "caused by a circumstance external to the member (not the result of preexisting disease that is aggravated or accelerated by the work)"—as requiring the member to establish "a new onset of a [mental] disease." 192 N.J. 189, 213 (2007). The Board found H.F. suffered a traumatic event that was caused by an external circumstance while working but denied him ADR benefits because his disability resulted from an exacerbation of a preexisting mental health disorder.

For the reasons that follow, we reverse the Board's decision because its heightened interpretation of Richardson factor 2(c), as precluding ADR benefits to members who suffer a disability due to an exacerbation of a preexisting mental health disorder, is unsupported.

2

## I.

H.F. is forty years old, has been married for over ten years, and has two young children. He served honorably in the United States Marine Corps from 2004 to 2008. While serving in the Marines, H.F. suffered from alcohol use disorder. Related to his military service, H.F. experienced the following: four IED explosions; the death of a friend by a sniper; discovering a Marine's suicide; and the loss of his best friend from a landmine explosion.

After his military service, in about December 2012, H.F. was hired by the Passaic County Sheriff's Office (PCSO). He struggled with alcohol use between 2012 and 2015. H.F. also experienced post-traumatic symptoms, including nightmares and deployment flashbacks, depression, poor concentration, and hypervigilance. His symptoms affected his personal relationships. In contrast, H.F. excelled at work, as evidenced by a 2013 promotion, positive performance reviews, and strong working relationships with colleagues. While H.F. experienced anger at times, he "learned to manage his anger in therapy."

In 2015, H.F. received treatment for about six months at the Veteran's Medical Center (VMC) because he was diagnosed with alcohol use disorder and post-traumatic stress disorder (PTSD). It was determined the disorders were "more likely than not . . . caused by the stressors that" H.F. "experienced in the

military." After treatment and a full evaluation in July 2015, the VMC determined H.F. was capable of working full time and "not a danger to himself or others." Thereafter, H.F. received no further treatment. He continued to excel in his personal life and career, receiving a PCSO promotion to sergeant in February 2020.

On May 23, 2020, H.F. was dispatched, along with Sergeants J.V. and A.E., to a report of shots fired. H.F. responded in a marked police vehicle and observed a suspicious "man walking with a limp." J.V. exited the police vehicle and walked toward the suspect, but the man fled. H.F. pursued the suspect who fell to the ground.

After seeing J.V. point his firearm, H.F. drew his weapon. J.V. verbally warned others that the suspect had a gun, and H.F. realized the suspect was pointing a gun at him from three feet away. H.F. then heard a gunshot, was terrified for his life and "the lives of [his] fellow officers," and believed he would be killed. He thought about his family and never returning home to see them. H.F. shot the suspect in the chest, and J.V. and A.E. discharged their firearms. The suspect fell to the ground and reached for his gun. H.F. shot the man four times in total, and the suspect died from the resulting injuries.

A-3848-23

At the scene, H.F. exhibited an acute stress reaction and was transported to the hospital. On June 3, H.F. advised the PCSO he was experiencing anxiety, nightmares, and shooting flashbacks. The PCSO placed H.F. on administrative leave, and his workers' compensation carrier referred him for medical evaluations. A physician "found [H.F.] to be suffering from PTSD."

In August 2020, H.F. began seeing therapist Nancy Gallina, Ph.D., weekly for his symptoms. About three months later, he began treatment with her husband, psychiatrist David Gallina, M.D.[2] David prescribed H.F. Lexapro, Klonopin, Abilify, and Trazadone. Nancy documented that H.F. conveyed "the threat of being shot[] 'with the gun pointed and ready to go at [him] was totally different'" than anything he experienced in the military. H.F. believed "he was [going to] die" during the shooting and thereafter reminded himself daily that he was able "to live another day for [him] and [his] family." He explained never having similar feelings "when [he] was a [M]arine." In an April 22, 2021 report, Nancy opined that H.F. was experiencing an exacerbation of PTSD from the shooting.

---

[2] As Nancy and David Gallina share the same surname, we use first names to avoid confusion. We intend no disrespect by this informality.

A-3848-23

On July 28, 2021, after his symptoms did not improve, H.F. filed an ADR benefits application under N.J.S.A. 43:16-7 with the Division of Pensions and Benefits. H.F. included a medical examination form, which David had completed. David listed H.F.'s symptoms and opined he was "unable to function as a police officer." He diagnosed H.F. with an "[e]xacerbation of [PTSD] with [d]issociative [s]ymptoms by history." Further, David opined within "a reasonable degree of medical certainty" that H.F. was "permanently and totally disabled as a result of an exacerbation of PTSD causally related to the shooting."

On April 25, 2022, the Board's expert Daniel B. LoPreto, Ph.D., evaluated H.F. LoPreto's report stated "there [wa]s no evidence to suggest that [H.F.] was motivated to portray himself in a more negative or pathological light than the clinical picture would warrant." LoPreto observed the "stress apparent in" H.F.'s clinical testing scores "may place [him] at [an] increased risk for self-harm." Further, LoPreto found H.F.'s life was "severely constricted by his tension," and H.F. was "[un]able to meet even minimal role expectations without feeling overwhelmed," as "[r]elatively mild stressors may be sufficient to precipitate a major crisis."

LoPreto reported within "a reasonable degree of psychological certainty" that H.F. presented symptoms consistent with the diagnoses of "chronic" PTSD

A-3848-23

and severe alcohol use disorder "in sustained remission." He found "[t]hese impairments would result in an unpredictability of response that would place [H.F.] at risk to himself, his fellow Sheriff's Officers, and the general public." LoPreto concluded that H.F. was "now totally and permanently disabled[] and unable to perform the duties of a Sheriff's Officer Sergeant as outlined in the reviewed job description," and his "disabling condition was present at the time he left work on May 23, 2020." However, after reviewing H.F.'s prior medical records, LoPreto ultimately determined that it "appear[ed] that [H.F.'s] disability [wa]s the result of a pre[]existing disease that was aggravated by the work incident, and therefore, not a direct result of the May 23, 2020 work incident."

While the Board granted H.F. ordinary disability retirement benefits on August 8, 2022, it denied him ADR benefits. In determining whether H.F. was entitled to ADR benefits from the traumatic event, the Board considered the established factors under N.J.S.A. 43:16A-7(a)(1). The Board found that H.F. established he was "totally and permanently disabled from the performance of [his] regular and assigned job duties" and he was "physically or mentally incapacitated from the performance of [his] usual or other duties." Regarding the traumatic event, it further found he demonstrated that the traumatic shooting satisfied the following factors: was "identifiable as to time and place"; was

A-3848-23

"undesigned and unexpected"; "occurred during and as a result of [his] regular or assigned duties"; was "caused by an external circumstance"; "was objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury"; and his "disability resulted from [a] 'direct personal experience of a terrifying or horror-inducing event that involved actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'"  However, the Board denied H.F. ADR benefits because his "reported disability [wa]s the result of a pre[]existing disease alone or a pre[]existing disease that [wa]s aggravated or accelerated by the work effort."

H.F. later learned the Board approved J.V. and A.E. for ADR benefits due to PTSD from the same shooting.  H.F. appealed from the Board's denial, and on October 18, 2022, the Board forwarded the matter to the Office of Administrative Law as a contested case.  The parties then engaged in discovery.

On February 24, 2023, David authored an expert report on H.F.'s condition.  David opined "with reasonable medical certainty" that the shooting "[wa]s the direct cause of [H.F.'s] current psychiatric condition" and "the substantial contributing cause of his current psychiatric condition and ultimate psychiatric disability."  Further, he concluded the following: H.F.'s "history and

8

records clearly indicate[d] that his prior condition of military service[-]related [PTSD] had resolved"; H.F. experienced an "additional negative impact" from the shooting because he "was a married man and father of a child, as contrasted with his state of life as" a "young man in the Marines"; H.F. was "not disabled for police work prior to the shooting"; and that during H.F.'s course of treatment with Nancy and himself, H.F.'s "complaints and emotional state . . . were solely and directly related to the shooting."

On May 11, the parties stipulated before the Administrative Law Judge (ALJ) that H.F. satisfied all the N.J.S.A. 43:16A-7(a)(1) ADR factors as recognized in Richardson, except factor 2(c). They also agreed H.F. demonstrated the shooting met the "terrifying or horror-inducing event" standard outlined in Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29 (2008). The ALJ conducted a three-day hearing. The parties consensually admitted into evidence: H.F.'s VMC medical records; H.F.'s medical records from his treatment with Nancy and David; David's expert report; Nancy's expert report; and LoPreto's expert report. The experts, along with H.F., J.V., A.E., and the PCSO's Chief, testified.

J.V. and A.E. confirmed H.F.'s account of the shooting. David testified that but for the shooting, H.F. "would have continued as a successful officer and

. . . retired after [twenty-five] years," which LoPreto did not refute. David further opined that H.F.'s military service-related PTSD symptoms resolved in 2015, and H.F. "demonstrated no signs, symptoms[,] or functional signs of . . . [PTSD] as related to his past military experience" thereafter. LoPreto similarly testified that "to the best of [his] knowledge, [H.F.] was not disabled, either short-term or long-term, prior to the" shooting.

On April 17, 2024, the ALJ issued an initial decision affirming the Board's denial of H.F.'s ADR benefits. The ALJ took judicial notice of the medical definitions for "resolved" and "exacerbated," taking "resolved" to mean "restore to the normal state after some pathologic process" and "exacerbated" to mean "cause a disease or its symptoms to become more severe" or "to make worse." The ALJ found the following: David and LoPreto agreed H.F. was not disabled before the shooting on May 23, 2020; that contrary to David's opinion, H.F.'s PTSD had not fully resolved in 2015, and H.F. lacked a "new onset of PTSD" from the shooting; and David's diagnosis lacked credibility because David's August 9, 2021 diagnostic report, which determined the shooting exacerbated H.F.'s PTSD, contradicted his 2023 expert report finding H.F.'s PTSD had resolved in 2015.

The ALJ concluded it was not "likely . . . that the shooting . . . directly caused . . . a completely new case of PTSD where there was no residual condition of PTSD present" and H.F. had instead suffered an aggravation of his "pre[]existing, dormant" PTSD. The ALJ also reasoned "there [wa]s no basis for [David's] opinion that the shooting . . . was the 'direct cause' or . . . 'substantial cause' of [H.F.'s] current PTSD condition."

On July 8, after reviewing the parties' arguments and evidence, the Board issued its decision adopting the ALJ's initial decision and denying H.F.'s ADR benefits.

On appeal, H.F. argues the Board erred in adopting the ALJ's initial decision and denying H.F.'s ADR benefits, raising the following contentions: the ALJ's findings support granting him ADR benefits under precedential case law that has interpreted "direct result" and "prior injury"; the ALJ imposed a heightened standard rejected under Petrucelli v. Board of Trustees, Police and Firemen's Retirement System, 211 N.J. Super. 280 (App. Div. 1986); the ALJ distorted David's terminology and the applicable law; the ALJ incorrectly followed the Board's earlier misinterpretation of Richardson factor 2(c), imposing "a prejudicially high standard on the finding of 'direct result'"; and the

11

ALJ wrongly concluded H.F. failed to prove his PTSD was the direct result of the shooting.

## II.

Our review of an agency determination is limited. Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27). "The 'search for arbitrary or unreasonable agency action' may involve the question 'whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law. . . .'" Bowser v. Bd. of Trs., PFRS, 455 N.J. Super. 165, 170 (App. Div. 2018) (quoting Mazza v. Bd. of Trs. PFRS, 143 N.J. 22, 25 (1995)). "We are not, however, 'bound by an agency's interpretation of a statute or its determination of a strictly legal issue, particularly when that interpretation is inaccurate or contrary to legislative objectives.'" Mount v. Bd. of Trs., PFRS, 233 N.J. 402, 418-19 (2018) (quoting Russo, 206 N.J. at 27) (internal quotation marks omitted). We review de novo "an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27.

12

When interpreting a statute, we first review its language. Malanga v. Township of West Orange, 253 N.J. 291, 310 (2023). "Where statutory language is clear, courts should give it effect unless it is evident that the Legislature did not intend such meaning." Bubis v. Kassin, 184 N.J. 612, 626 (2005) (quoting Rumson Ests., Inc. v. Mayor of Fair Haven, 177 N.J. 338, 354 (2003)). We "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." W.S. v. Hildreth, 252 N.J. 506, 519 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)); see also N.J.S.A. 1:1-1 ("In the construction of . . . statutes[,] . . . words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature[,] . . . be given their generally accepted meaning, according to the approved usage of the language."). "When reviewing a statute's plain language, we do not parse its provisions. Rather, we consider 'not only the particular statute in question, but also the entire legislative scheme of which it is a part.'" State v. Italiano, 480 N.J. Super. 1, 9 (App. Div. 2024) (quoting State v. Olivero, 221 N.J. 632, 639 (2015)).

N.J.S.A. 43:16A-7 prescribes the permanent and total disability requirements a member must meet to receive ADR benefits. To qualify for ADR

benefits, an employee must demonstrate that he or she "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties." Mount, 233 N.J. at 419 (quoting N.J.S.A. 43:16A-7(a)(1)). ADR benefits "entitle[] a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson, 194 N.J. at 43.

"[A] traumatic event is . . . an unexpected external happening that directly causes injury and is not the result of pre[]existing disease alone or in combination with work effort." Richardson, 192 N.J. at 212. To establish entitlement to ADR benefits under N.J.S.A. 43:16A-7(a)(1), the Supreme Court has elucidated that a member must prove:

> 1. that he [or she] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre[]existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Mount, 233 N.J. at 421 (quoting Richardson, 192 N.J. at 212-13).]

Our Supreme Court has concluded that the words "traumatic event" and "direct result" in N.J.S.A. 43:16A-7 reflect the Legislature's intent "to make the granting of an accidental disability pension more difficult." Kasper v. Bd. of Trs. of the Tchrs.' Pension & Annuity Fund, 164 N.J. 564, 576 (2000). Further, the Court has also defined regularly assigned duties as "all activities engaged in by the employee in connection with his or her work." Id. at 585-86.

Additionally, the Legislature clearly extended accidental disability "coverage for mental injuries" to members. Patterson, 194 N.J. at 44. To substantiate a covered traumatic mental injury, the member is required to demonstrate "that the disability resulted from a 'direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'" Mount, 233 N.J. at 424 (quoting Patterson, 194 N.J. at 34). Our Court has provided "examples of retirement system members

15

who 'could vault the traumatic event threshold,' . . . cit[ing] 'a permanently mentally disabled police[ officer] who sees his [or her] partner shot; a teacher who is held hostage by a student; and a government lawyer used as a shield by a defendant.'" Id. at 423 (quoting Patterson, 194 N.J. at 50). "[A] member who seeks accidental disability benefits must prove a disabling permanent mental injury and, in so doing, must produce such expert evidence as is required to sustain that burden." Patterson, 194 N.J. at 50-51.

III.

H.F. contends the Board erroneously adopted the ALJ's initial decision denying him ADR benefits based on an incorrect interpretation of Richardson factor 2(c) and the application of a heightened standard. H.F. specifically argues he established the shooting was a traumatic event that directly caused an exacerbation of his asymptomatic PTSD, and he is not required to establish a new mental disability to receive ADR benefits. After reviewing the applicable law and record, we agree.

Before addressing H.F.'s arguments, it is important to recognize that the Board has accepted the following: the shooting was a traumatic event; H.F. became disabled as a result of an exacerbation of his preexisting PTSD; and H.F.

16

met all the Patterson and Richardson factors except for Richardson factor 2(c).[3]

It is undisputed that the Supreme Court determined that factor 2(c) requires that the member's disability must be "caused by a circumstance external to the member (not the result of pre[]existing disease that is aggravated or accelerated by the work)." Mount, 233 N.J. at 421 (quoting Richardson, 192 N.J. at 212-13).

We turn to address the question of whether the Board correctly interpreted that Richardson factor 2(c) requires H.F. to demonstrate "a new onset of a [mental] disease." Stated another way, H.F. contends the Board's denial of his ADR benefits warrants reversal because it misinterpreted N.J.S.A. 43:16A-7(a)(1)'s "direct result of a traumatic event" requirement, as clarified by Richardson factor 2(c), and improperly imposed a heightened standard. The Board determined factor 2(c) is satisfied only if the member proves a new mental disability and that a mental disability resulting from an aggravation of a preexisting injury "alone," which is caused by a traumatic event, is insufficient. The Board also adopted the ALJ's interpretation that in a mental disability case,

---

[3] We note it is well-established that a member seeking ADR benefits due to a mental disability must first satisfy Patterson's "terrifying or horror-inducing event" standard before arguing that he or she meets the Richardson factors. See Russo, 206 N.J. at 32; see also Mount, 233 N.J. at 407.

a member is "obliged (per requirement 2[(c)] of <u>Richardson</u>) to prove that [the] disability [i]s not an aggravation (exacerbation) of [the member's] pre[]existing [mental illness]."

After a review of the applicable law, we hold that a member may prove a disability was caused by a traumatic event, satisfying <u>Richardson</u> factor 2(c), if the member proves a disabling exacerbation of a preexisting mental disorder was caused by an external work circumstance. We recognize, of course, that the member must also meet the other factors to be awarded ADR benefits.

Our conclusion is consistent with a long-established line of Supreme Court cases. The Supreme Court has recognized that a basis to award ADR benefits "exist[s] if it [is] shown that the disability directly resulted from the combined effect of a traumatic event and a preexisting disease." <u>Cattani v. Bd. of Trs., PFRS</u>, 69 N.J. 578, 586 (1976). The Court explained that "accidental disability . . . may arise even though an employee is afflicted with an underlying physical disease bearing causally upon the resulting disability. In such cases, the traumatic event need not be the <u>sole</u> or <u>exclusive</u> cause of the disability." <u>Gerba v. Bd. of Trs., PERS</u>, 83 N.J. 174, 187 (1980), <u>overruled on other grounds by Maynard v. Bd. of Trs., Tchrs' Pension & Annuity Fund</u>, 113 N.J. 169, 177 (1988) (emphasis in original); <u>see also Richardson</u>, 192 N.J. at 202-04, 210-12

(referencing Gerba and Cattani positively). The "traumatic event" must "constitute[] the essential significant or the substantial contributing cause of the resultant disability." Gerba, 83 N.J. at 186. ADR benefits are "available to those with a preexisting disease only where an unusual or excessive effort aggravated or accelerated that disease." Id. at 184 (quoting Hillman v. Bd. of Trs., PERS, 109 N.J. Super. 449, 460 (App. Div. 1970)). Unquestionably, to receive ADR benefits, the member has the burden of demonstrating a distinct exacerbation of a preexisting injury or condition that has disabled the member and was caused by the traumatic event—not regular work duties.

A qualifying traumatic event is "an unexpected external happening that directly causes injury and is not the result of pre[]existing disease alone or in combination with work effort." Russo, 206 N.J. at 30 (emphasis added) (quoting Richardson, 192 N.J. at 212). As our Supreme Court held in Richardson, regular "work effort itself or combined with pre[]existing disease cannot be . . . [a] traumatic event." 192 N.J. at 211. It is clear, a member must demonstrate an exacerbation of a preexisting injury caused by the unexpected traumatic external event—in this case the shooting—and not regular work duties. The member must establish the traumatic event was the cause of his or her suffered

exacerbation of a preexisting physical or mental injury through credible medical evidence.  See Patterson, 194 N.J. at 50-51.

In the present case, the undisputed credible medical evidence established H.F. suffered the mental disability of an exacerbation of his PTSD as a direct result of the shooting, which was a circumstance external to his regular police duties.  Relevantly, both experts agreed H.F. was not disabled before the shooting, and only after the shooting did he suffer an aggravation of his PTSD. Specifically, David opined within a reasonable degree of medical certainty that the May 2020 shooting directly caused H.F.'s "current psychiatric condition" and "ultimate psychiatric disability."  David also opined that H.F.'s earlier psychiatric condition "certainly" did not disable him "for police work."  LoPreto agreed that a mental disability can be "in sustained remission."  Thus, H.F. irrefutably showed objective medical evidence that he suffered a qualifying exacerbation of a preexisting injury that was a "direct result" of "a circumstance external to" him under Richardson factor 2(c).  We note, as the experts' testimony and reports demonstrate, the diagnosis of a mental disability, like

20

A-3848-23

PTSD,[4] differs from a physical disability diagnosis but can equally disable a member from returning to work. Were we to accept the Board's heightened standard, no member suffering an aggravation of a prior mental disability diagnosis that was asymptomatic, in remission, latent, or otherwise resolved could ever meet the Richardson and Patterson standards.

Reviewing Richardson's traumatic event examples involving a preexisting condition is instructive and supports our interpretation. Our Supreme Court explained that "a police officer who has a heart attack while chasing a suspect has not experienced a traumatic event," because "the work effort, alone or in combination with [a] pre[]existing disease, was the cause of the injury." Richardson, 192 N.J. at 213. In contrast, the Court clarified that a member with

---

[4] It bears noting that "[i]t is because of the difficulties inherent in the diagnosis of psychiatric illness that the 'mental-mental' category of injuries has sparked so much litigation and debate." Hayes v. Bd. of Trs., PFRS, 421 N.J. Super. 43, 54 (App. Div. 2011). We have recognized that "PTSD is a complex diagnosis given the disorder's definitions, which notably include a wide variety of symptoms, and is not a monolithic disease with a uniform structure that does not permit individual variation." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 526 (App. Div. 2017) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 424-29 (4th ed. 1994)). We note the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders, published in 2022 by the American Psychiatric Association, provides the "essential feature of [PTSD] . . . is the development of characteristic symptoms following exposure to one or more traumatic events" and "[t]he clinical presentation of PTSD varies." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 305 (5th ed., text rev. DSM-5-TR 2022).

an underlying disease that is worsened by a traumatic event, such as a "gym teacher . . . [with degenerative arthritis] who trips over a riser and is injured[,] has satisfied the [2(c)] standard." Ibid. The Court's example illustrates that a member with a preexisting disease may satisfy Richardson factor 2(c) by proving a traumatic event caused a disabling aggravation or exacerbation injury. Therefore, once a member meets the initial Patterson "terrifying or horror-inducing event" standard, and thereafter, the Richardson factors, the member should be awarded ADR benefits for a mental disability under N.J.S.A. 43:16A-7(a)(1). Again, "[t]he polestar of the inquiry is whether, during the regular performance of his [or her] job, an unexpected happening, not the result of pre[]existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214 (emphasis added).

Based on our interpretation of Richardson and the undisputed medical record presented, we conclude H.F.'s exacerbation of his PTSD satisfied factor 2(c). We see no distinction between an exacerbation of a physical disability and a mental disability for an award of ADR benefits. We hold Richardson factor 2(c) is satisfied when a member demonstrates he or she has suffered a disabling exacerbation of a preexisting mental health disorder that was caused by an

22

external traumatic event, which was not a result of the member's regular work duties. The Board's acceptance of the ALJ's finding that H.F. was totally and permanently disabled from his PTSD, which was caused from the traumatic shooting event that "aggravated" his "preexisting, dormant condition of PTSD," is dispositive. H.F., therefore, is entitled to ADR benefits for the exacerbation of his asymptomatic PTSD that was the direct result of the traumatic shooting, which was a circumstance external to his work duties, and rendered him disabled.

In sum, the Board applied an improper heightened standard in finding H.F. could not satisfy N.J.S.A. 43:16A-7(a)(1)'s "direct result" requirement, as clarified by Richardson factor 2(c), based on a disabling "exacerbation" of PTSD. For these reasons, we reverse the Board's decision and remand for the Board to grant H.F. ADR benefits.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hartley

Clerk of the Appellate Division

A-3848-23